James H. Hohenstein
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: jim.hohenstein@hklaw.com
       marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Clearlake Shipping Pte Ltd*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————

CLEARLAKE SHIPPING PTE LTD,

                              Plaintiff,

    - against -

O.W. BUNKER (SWITZERLAND) SA, O.W.
BUNKER USA INC., O W. BUNKER NORTH
AMERICA INC., O.W. BUNKER HOLDING
NORTH AMERICA INC., NUSTAR ENERGY
SERVICES INC., ING BANK N.V.

                              Defendants.

—————————————————————



14 Civ. _____ (    )

**COMPLAINT
FOR INTERPLEADER**

        Plaintiff Clearlake Shipping Pte Ltd ("Clearlake"), by and through its attorneys Holland

& Knight LLP, as and for its Complaint for Interpleader pursuant to 28 U.S.C. §§ 1335(a) and

2361 alleges, upon information and belief, as follows:

                              **THE PARTIES**

        1       Clearlake is a foreign corporation organized and existing under the laws of

Singapore, with an office and place of business at 12 Marina Boulevard, #35-02 Marina Bay

Financial Tower 3, Singapore 018982.

2.      Defendant O.W. Bunker (Switzerland) SA ("OWBSSA") is a corporation or business entity organized and existing pursuant to the laws of Switzerland, with an office and place of business at 20 Rue Adrien-Lachenal, CH-1207, Geneva, Switzerland.

3.      Defendant O.W. Bunker USA Inc. ("OW USA") is a corporation or business entity organized and existing pursuant to the laws of Texas, with an office and place of business at 2603 August Drive, Suite 440, Houston, TX 77057.

4.      Defendant O.W. Bunker North America Inc. ("OW North America") is a corporation or business entity organized and existing pursuant to the laws of Connecticut, with an office and place of business at 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

5.      Defendant O.W. Bunker Holding North America Inc. ("OW Holding") is a corporation or business entity organized and existing pursuant to the laws of Connecticut, with an office and place of business at 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

6.      Defendant NuStar Energy Services, Inc. ("NuStar") is a corporation or business entity organized and existing pursuant to the laws of a state of the United States, with an office and place of business at 19003 IH-10 West, San Antonio, Texas 78257.

7.      Defendant ING Bank N.V. ("ING") is a bank organized and existing pursuant to the laws of the Netherlands with an office and place of business located at Amsterdamse Poort, Bijlmerplein 888, 1102 MG Amsterdam, The Netherlands.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h),  inasmuch as it involves the interpleader of funds in the possession of Clearlake for the payment pursuant to a bunker supply contract for the provision of necessaries (i.e., fuel oil or bunkers) to the vessels Venus Glory and Hellas Glory (collectively, the "Vessels").

9.     This Court has original jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335(a) in that for the bunker payments in question: (a) at least two of the claimants are of diverse citizenship; (b) the dispute between the claimants involves funds in an amount exceeding $500.00, exclusive of interest and costs; and (c) Clearlake is the stakeholder of the funds and, concurrently with the filing of this Complaint, will seek to make a deposit in the Court's Registry in the sum of $1,308,597.10.

10.     This Court has personal jurisdiction over defendant OWBSSA pursuant to the terms of the applicable bunker supply contract.

11.      This Court has personal jurisdiction over defendants OW USA, OW North America, OW Holding and NuStar pursuant to 28 U.S.C. §2361.

12.     This Court has personal jurisdiction over ING to the extent it is or may be a third-party beneficiary of the bunker supply contract at issue in this dispute and to the extent that it is an alleged assignee of the receivables of OWBSSA and/or OW USA and/or OW North America and/or OW Holding.  Additionally, ING transacts business within the jurisdiction of this Court.

13.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1397.

**NATURE OF ACTION**

14.     This is an action for interpleader with respect to the sum of $1,308,597.10 representing the amount due under invoices for the supply of bunkers to the Vessels.   With respect to payment of the invoice, OWBSSA, OW USA, OW North America, OW Holding, NuStar, ING or some other third party may have conflicting claims as to ownership of the funds owed by Clearlake for the purchase of and receipt of a quantity of bunkers (fuel) by the Vessels.

**FACTUAL BACKGROUND**

15.     On or about October 14, 2014, Clearlake ordered bunkers to be loaded onboard and consumed by the Venus Glory from OWBSSA.  OWBSSA is apparently a corporate affiliate of OW USA, OW North America and OW Holding.  The bunkers were to be supplied to the Venus Glory in Houston, Texas.  A true copy of the Sales Order Confirmation is attached hereto as Exhibit A.  On this document, the "supplier" is identified as "NuStar."  The bunkers were delivered to Venus Glory on October 20, 2014.

16.     An invoice was issued to Clearlake on October 20, 2014 by OWBSSA for the supply of bunkers to Venus Glory.  The invoice directs payment of $327,637.29 to OWBSSA.  A true copy of the bunker invoice is attached hereto as Exhibit B.

17.     On or about October 14, 2014, Clearlake ordered bunkers to be loaded onboard and consumed by the Hellas Glory from OWBSSA.  The bunkers were to be supplied to the Hellas Glory in Houston, Texas.  A true copy of the Sales Order Confirmation is attached hereto as Exhibit C.  On this document, the "supplier" is identified as "NuStar."  The bunkers were delivered to Hellas Glory on October 26, 2014.

18.     An invoice was issued to Clearlake on October 20, 2014 by OWBSSA for the supply of bunkers to Hellas Glory.  The invoice directs payment of $980,959.81 to OWBSSA.  A true copy of the bunker invoice is attached hereto as Exhibit D.

19.     The standard terms and conditions of all OW Bunker entities for the sale of bunkers includes clause P.5: "Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim aris[ing] in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York."  A true copy of the OW Bunker terms is attached hereto as Exhibit E.

20.     On or about November 11, 2014, Clearlake received an e-mail from NuStar.  A true copy of the e-mail is attached hereto as Exhibit F.  In the e-mail NuStar states that it "sold fuel to OW Bunker USA as the agent for the vessels Venus Glory and Hellas Glory….OW Bunker USA Inc. is in financial distress and it has advised us that it will not pay the [NuStar] invoice.  We therefore ask that vessel interests immediately pay the invoice directly to NuStar….If we do not receive payment promptly, we may have no choice but to assert a maritime lien against the vessel."  By e-mail dated November 13, 2014 (Exhibit F) NuStar forwarded to Clearlake copies of the sales agreements and invoices between NuStar and OW USA pertaining to Venus Glory and Hellas Glory (true copies attached hereto as Exhibits G and H, respectively).

21.     On or about November 13, 2014, OW USA, OW North America and OW Holding all filed voluntary petitions pursuant to Chapter 11 in the United States Bankruptcy Court for the District of Connecticut as Case Nos. 14-51720, 14-51721 and 14-51722.[1]

22.     Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and its subsidiaries (believed to include OWBSSA, OW USA, OW North America and OW Holding), and ING as Security Agent, the O.W. entities have allegedly assigned certain rights in respect of their supply contracts as security to ING.

23.     Due to the bankruptcy filings of the Defendants OW USA, OW North America and OW Holding, it is possible that NuStar or ING will seek to collect amounts allegedly owed to them arising from or related to the supply of bunkers to the Vessels.

## POSSIBLE ARREST OF VESSEL AND NECESSITY OF INTERPLEADER

24.     Under United States maritime law, it is undisputed that the contract supplier (such as OWBSSA) of necessaries, including fuel, to a vessel obtains a maritime lien against that vessel.   Additionally, under certain circumstances, a physical supplier of the fuel (such as NuStar) may also assert a maritime lien on that vessel.

25.     Moreover, other parties, such as ING, may be expected to assert a right to the bunker payment.

26.     The Vessels are due to call at various ports in the United States and could face arrest pursuant to Supplemental Admiralty Rule C by any of the defendants claiming to assert a

---

[1] Clearlake respectfully submits that this interpleader action does not violate the automatic stay imposed by the Banrkuptcy Code, 11 U.S.C. § 362.  *See Price & Pierce Int'l, Inc  v  Spicers Int'l Paper Sales, Inc* , 50 B.R. 25, 26 (S.D.N.Y. 1985) (as debtor was in reality nominal defendant in interpleader action, interpleader action did not violate automatic stay).

maritime lien,[2] which would cause harm to Plaintiff, delay the Vessels, affect innocent third parties with interests in the Vessels' cargo and generally inhibit maritime commerce.

27.     Clearlake presently has control over the funds invoiced for the supply of bunkers to the Vessel.  Clearlake disclaims any interest in the amount invoiced for the supply of bunkers to the Vessels.

28.     Clearlake cannot ascertain whether the amounts owed should be paid to OWBSSA, OW USA, OW North America, OW Holding, NuStar or ING in order to extinguish all maritime liens and/or other claims against Clearlake and the Vessels and to prevent their arrest in this District or elsewhere.

29.     The competing claims of the Defendants or other third parties may expose Clearlake to multiple liability in connection with the payment of the bunker invoices in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

30.     Clearlake is entitled to deposit with the Court the sum of $1,308,597.10, representing the amount due pursuant to the bunker invoices, and require that OWBSSA, OW USA, OW North America, OW Holding, NuStar, ING and any other claimant interplead among themselves to establish their respective rights to the invoice funds.

31.     After depositing the sum of $1,308,597.10 with the Court, Clearlake is entitled to be discharged from further liability with respect to the funds.  The Vessels are similarly entitled to be discharged from any maritime liens against them arising from the supply of bunkers as described herein and as reflected in Exhibits A – D and G - H.

---

[2] Clearlake makes no assertion nor takes a position as to the validity of any of the potentially asserted maritime liens or other claims by any of the Defendants.  This issue is a matter to be decided by the District Court.

WHEREFORE, Plaintiff Clearlake respectfully requests that this Court:

(i)        determine which of the defendants is entitled to the bunker invoice funds, or, in the alternative, the share of each defendant, if any;

(ii)        enjoin O.W. Bunker (Switzerland) SA, O.W. Bunker USA Inc., O.W. Bunker North America Inc., O.W. Bunker Holding North America Inc., NuStar Energy Services, Inc. and ING Bank, N.V. as well as any other claimant from commencing any action against Clearlake Shipping Pte Ltd, including but not limited to the arrest of the Vessels Venus Glory and/or Hellas Glory in any port subject to U.S. jurisdiction, pursuant to Supplemental Admiralty Rule C based on the assertion of any *in rem* claim for the provisions of the bunkers;

(iii)        discharge Clearlake Shipping Pte Ltd from any liability on any claim that has been made or may in the future be made to the $1,308,597.10 upon Clearlake's deposit of the funds into this Court's registry;

(iv)        discharge the vessels Venus Glory and Hellas Glory from any liability on any claim that has been made or may in the future be made to the $1,308,597.10 upon Clearlake's deposit of the funds into this Court's registry;

(v)        award Clearlake Shipping Pte Ltd its costs and attorneys' fees in this action; and

    (vi)    award Clearlake Shipping Pte Ltd such other and further relief which this Court may deem just and proper.

Dated:  New York, New York
           November 21, 2014

                      HOLLAND & KNIGHT LLP

                      By: _____
                      James H. Hohenstein
                      Marie E. Larsen
                      31 West 52nd Street
                      New York, New York 10019
                      Telephone:  212-513-3200
                      Telefax: 212-385-9010
                      Email:  jim.hohenstein@hklaw.com
                                marie.larsen@hklaw.com
                      *Attorneys for Plaintiff Clearlake Shipping Pte Lt*

#34091062_v1

# EXHIBIT A

## O.W. BUNKER (SWITZERLAND) SA
## OWB Switzerland  RS

 **Bunker**

Clearlake Shipping Pte  Ltd
2 Battery Road
30-00 Maybank Tower
049907 Singapore
Republic of Singapore
Mr Albert Saifulin

20 Rue Adrien-Lachenal
CH-1207 Geneva
Switzerland
+41 22 737 1620
+41 223 106 592
Email  geneva@owbunker com
ING Bank N V
IBAN  NL26 INGB 0020 1180 31
IBAN  NL10 INGB 0651 3696 81
SWIFT  INGBNL2A

# Sales Order Confirmation

Switzerland   14  October 2014

| | |
|---|---|
| **Sales Order No.** | **157-15523** |

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| **Vessel** | VENUS GLORY (IMO  9393682) |
| **Port** | HOUSTON |
| **Delivery date** | Between 18  October 2014 and 19  October 2014 |
| **Seller** | OWB Switzerland |
| **Your ref.** | |
| **Account** | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV VENUS GLORY AND/OR CLEARLAKE SHIPPING PTE  LTD |

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 615 00 | MT | Fueloil 380-CST 3,5% | USD | 514 00 | MT | Nustar |

| | |
|---|---|
| **Agent** | LBH |
| **Payment** | WITHIN 21 DAYS FROM DATE OF DELIVERY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX)  COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| **Remarks** | 8 20 USD/MT, minimum 8855 00 USD (HOUSTON  TX) 9 60 USD/MT, minimum 10385 00 USD (BARBOUR'S CUT, TX) 10 75 USD/MT, minimum 11625 00 USD (BAYPORT  TX) 10 75 USD/MT, minimum 11625 00 USD (GALVESTON, TX) 10 75 USD/MT, minimum 11625 00 USD (TEXAS CITY, TX) 13 25 USD/MT, minimum 14330 00 USD (BOLIVAR ROADS, TX - Weather Permitting) 18 20 USD/MT, minimum 19655 00 USD (FREEPORT, TX) |

Plus 24% barging fuel surcharge

WHARFAGE FEES (0 30 USD/MT)
TERMINAL SEC FEES (0 045 USD/MT)
HARBOR FEES (32 00 USD)
PORT SEC FEES (13 25 USD)

# O.W. BUNKER (SWITZERLAND) SA
# OWB Switzerland  RS



We thank you for this nomination

Kind Regards

Richard Bjercke

| | |
|---|---|
| Direct | +41 227 371 622 |
| Mobile | +41 79 935 83 05 |
| Yahoo ID | rbj_owbunker |
| E-Mail | rbj@owbunker com |
| Office E-Mail | geneva@owbunker com |

**TERMS AND CONDITIONS**

-----------------------------------------------

**SAMPLES**

Measuring and sampling to be done at barge/tanktruck/shoreside manifold, and receiving Vessels crew is requested to witness and verify the measuring of quantity and the drawing and sealing of samples  These verified quantities as noted in the BDR aswell as these samples taken are the only ones deemed representative, and any dispute regarding quality to be settled by testing these retained samples by an independent laboratory at port/place of delivery, and result of this testing is deemed to be final and binding for both parties

**TERMS**

The sale and delivery of the marine fuels described above are subject to the OW Bunker Group's Terms and Conditions of sale(s) for Marine Bunkers  The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of the said general terms applicable to you as  Buyer  and to OWB Switzerland as  Seller
The fixed terms and conditions are well known to you and remain in your possession  If this is not the case  the terms can be found under the web address
http //owbunker com/wp-content/uploads/2013/12/OWB_GTC_ValidFrom01092013 pdf

**GUIDELINES FOR RECEIVING BUNKERS**

We strongly urge you to forward the information regarding  General Instructions and Guidelines for Bunkering, for Receiving Vessels, on page 3, soonest possible to your Chief Engineer onboard Following the suggested Guidelines should minimize risk of quantity disputes Please bear in mind that barge figures are the sole valid quantity determination, wherefore Chief Engineer's attendance onboard the barge is extremely important

**OTHERWISE**

Any errors or omissions in above Confirmation should be reported immediately

**PLEASE INFORM US BY RETURN IF ABOVE NOMINATION DETAILS ARE NOT IN ACCORDANCE WITH YOUR UNDERSTANDING**

**O.W. BUNKER (SWITZERLAND) SA**
**OWB Switzerland  RS**



GENERAL INSTRUCTIONS AND GUIDELINES FOR BUNKERING, FOR RECEIVING VESSELS

BEFORE BUNKERING

Please make sure to check all information given by the supplier on Bunker Requisition Form or such similar form as the supplier presents via the barge  If you notice changes in quantity or quality please urgently contact the relevant person in charge in your own operations to have same verified

Make sure to witness and verify initial measurements and ullaging onboard the barge before  ALL tanks to be checked and measured including actual temperature  of cargo – also including those tanks said not to be included in the particular supply (idle tanks)  Compare measurements and verify the quantities as per barge ullage tables  When in full agreement please sign the ullage/sounding report for Before Supply figures  If any disagreements with the measurements, temperature and thereby figures please advise this on the Sounding form or, if not allowed, on separate Letter of Protest (make sure to obtain signature and stamp from barge Master for receipt)

If surveyor attends please ensure the surveyor also participates in measuring all barge tanks before supply and verify the figures

DURING BUNKERING

Always place a watchman to witness safe operation including also proper and correct sampling  The watchman must ensure that sampling is done properly, as continuous drip sampling throughout the delivery, and that clean devices are used for sampling  Also the watchman must witness proper and correct division into minimum 4 (four) clean and new identical sample bottles, including proper labeling and sealing of ALL samples  Make sure original sample (cubitainer) is shaken vigorously for 3 minutes before splitting into the 4 sample bottles and that bottles are filled in several passes   All seal numbers to be inserted into the Bunker Delivery Receipt (BDR)  The MARPOL sample must be one of these samples drawn under witnessing

The watchman must pay special attention to the bunker hose  and any un-agreed attempts to transfer air via same should cause immediate stoppage unless the use of air  is caused by stripping of barge tanks  which stripping to be agreed in advance by both parties  If air is blown on continued basis, and stoppage on the supply not possible for any reason, the incident to be stated on a Letter of Protest, which should also contain  the time (hours from/to) that airblow was notified

It is known in some areas that the so-called Cappucino Effect may be used or attempted to be used during supply  Pay special attention hereto and take all necessary precautions to observe, which includes
- During tank measurements before it should be notified whether there are signs of air on the measuring tape used for ullaging
- Look carefully for any signs of bubbles or similar on the surface of the fuel when it is still onboard the barge
- Agree with the barge when and if they are going to make stripping of their tanks
- Check and note the draft fore, mid and aft on the barge before and after supply to compare
- If any signs at all of cappuccino or similar (except eventual stripping, agreed in advance), please stop the supply immediately and compare supply quantities made so far
- Contact vessel operator in charge and request notification to the Seller and Supplier immediately
- If surveyor attending please ensure that the surveyor signs a Letter of Protest also
- After stopping the bunker supply please wait minimum 1 hour to await bubbles to disappear and re-measure the barge jointly with barge Master

AFTER COMPLETION

Repeat the measurement  sounding and ullaging of the barge, including verification of temperature of each tank  Make sure also on completion to verify contents of ALL tanks, including those being idle

Report (ullage) must be signed by all parties involved, including eventual nominated surveyor  If disagreements with the figures (mm, temperature) a Letter of Protest to be issued, but also such specific disagreements to be stated on the Ullage report covering "after" supply

QUANTITY COMPLAINTS

Receiving Vessel to inform discrepancies in writing latest upon completion of taking the bunkers

# EXHIBIT B

M/V  VENUS GLORY IMO  9393682
AND/OR OWNERS/CHARTERERS

**(W) Bunker**

Clearlake Shipping Pte  Ltd
2 Battery Road
30-00 Maybank Tower
Singapore, 049907
Singapore
Mr Albert Saifulin

| | |
|---|---|
| DATE OF INVOICE : | **20. October 2014** |
| **INVOICE NO** : | **157-15787** |
| ORDER NO | 157-15523 |
| ACCOUNT NO | 23004 |
| OUR REF | Richard Bjercke |
| DATE OF SUPPLY | 20  October 2014 |
| DUE DATE | 10  November 2014 |

PORT  HOUSTON
YOUR REFERENCE

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 615 590  MT | Fueloil 380-CST 3 5% | 514,00  MT | 316 413 26 |
| 1 000  LPS | Harbour fee | 32 00  LPS | 32,00 |
| 1,000  LPS | Security Charges | 27,15  LPS | 27 15 |
| 1 000  LPS | Wharfage | 184 68  LPS | 184 68 |
| 1 000  LPS | Barging | 10 980 20  LPS | 10 980 20 |

| | | |
|---|---|---|
| Net Amount | USD | 327 637 29 |
| VAT Amount | USD | 0 00 |
| Total | USD | 327 637 29 |

Your VAT No
Our VAT No  CHE 112 483 462

| Taxable Amount US | 0% VAT Amount USD | Amount incl VAT USD | Rate of exchange USD |
|---|---|---|---|
| 327 637 29 | 0 00 | 327 637 29 | 1 0000 |

The prices are excl  all taxes and/or other fees

**TERMS OF PAYMENT**   21 days from date of delivery With value date not later than DUE DATE or previous working day
when it is a holiday  In case of delays in payment interest will be charged in accordance with our valid General Terms and Conditions

| | | | |
|---|---|---|---|
| **BANK:** | ING Bank N V | | **O W BUNKER SWITZERLAND S A WW** |
| | | | 20 Rue Adrien Lachenal |
| **ACCOUNT:** | IBAN  NL26 INGB 0020 1180 31 | USD and all other currencies | CH 1207  Geneva |
| | IBAN  NL10 INGB 0651 3696 81 | EUR | |
| | | | +41 22 737 1620 |
| | SWIFT  INGBNL2A | | +41 223 106 592 |
| | | | Email  geneva@owbunker com |

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account

# EXHIBIT C

# O.W. BUNKER (SWITZERLAND) SA
# OWB Switzerland  RS

 **Bunker**

Clearlake Shipping Pte  Ltd
2 Battery Road
30-00 Maybank Tower
049907 Singapore
Republic of Singapore
Mr Albert Saifulin

20 Rue Adrien-Lachenal
CH-1207 Geneva
Switzerland
+41 22 737 1620
+41 223 106 592
Email  geneva@owbunker.com
ING Bank N V
IBAN  NL26 INGB 0020 1180 31
IBAN  NL10 INGB 0651 3696 81
SWIFT  INGBNL2A

## Sales Order Confirmation

Switzerland  14  October 2014

| Sales Order No. | **157-15522** |
|---|---|

We are hereby pleased to acknowledge receipt of your order as follows

| | |
|---|---|
| Vessel | HELLAS GLORY (IMO  9354612) |
| Port | HOUSTON |
| Delivery date | 22  October 2014 |
| Seller | OWB Switzerland |
| Your ref | |
| Account | MASTER AND/OR OWNER AND/OR CHARTERERS AND/OR MV HELLAS GLORY AND/OR CLEARLAKE SHIPPING PTE  LTD |

| Quantity | Unit | Product / Quality | Curr | Price | Unit | Supplier |
|---|---|---|---|---|---|---|
| 1 740 00 | MT | Fueloil 380-CST 3 5% | USD | 514 00 | MT | Nustar |
| 75 00 | MT | Gasoil 0 1% | USD | 910 00 | MT | Nustar |

| | |
|---|---|
| Agent | LBH |
| Payment | WITHIN 21 DAYS FROM DATE OF DELIVERY UPON PRESENTATION OF INVOICE (ORIGINAL/TELEX/FAX)  COPY OF DELIVERY RECEIPT WILL BE FORWARDED WHEN WE HAVE RECEIVED SAME |
| Remarks | 8 20 USD/MT  minimum 8855 00 USD (HOUSTON  TX) |
| | 9 60 USD/MT  minimum 10385 00 USD (BARBOUR'S CUT  TX) |
| | 10 75 USD/MT  minimum 11625 00 USD (BAYPORT, TX) |
| | 10 75 USD/MT, minimum 11625 00 USD (GALVESTON  TX) |
| | 10 75 USD/MT  minimum 11625 00 USD (TEXAS CITY  TX) |
| | 13 25 USD/MT  minimum 14330 00 USD (BOLIVAR ROADS, TX - Weather Permitting) |
| | 18 20 USD/MT  minimum 19655 00 USD (FREEPORT TX) |
| | |
| | Plus 24% barging fuel surcharge |
| | |
| | WHARFAGE FEES (0 30 USD/MT) |
| | TERMINAL SEC FEES (0 045 USD/MT) |
| | HARBOR FEES (32 00 USD) |
| | PORT SEC FEES (13 25 USD) |

# O.W. BUNKER (SWITZERLAND) SA
# OWB Switzerland  RS



We thank you for this nomination

Kind Regards

Richard Bjercke

| | |
|---|---|
| Direct | +41 227 371 622 |
| Mobile | +41 79 935 83 05 |
| Yahoo ID | nbj_owbunker |
| E-Mail | nbj@owbunker com |
| Office E-Mail | geneva@owbunker com |

## TERMS AND CONDITIONS
-------------------------------------------

### SAMPLES

Measuring and sampling to be done at barge/tanktruck/shoreside manifold, and receiving Vessels crew is requested to witness and verify the measuring of quantity and the drawing and sealing of samples  These verified quantities as noted in the BDR aswell as these samples taken are the only ones deemed representative, and any dispute regarding quality to be settled by testing these retained samples by an independent laboratory at port/place of delivery, and result of this testing is deemed to be final and binding for both parties

### TERMS

The sale and delivery of the marine fuels described above are subject to the OW Bunker Group's Terms and Conditions of sale(s) for Marine Bunkers  The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of the said general terms applicable to you as  Buyer  and to OWB Switzerland as  Seller
The fixed terms and conditions are well known to you and remain in your possession  If this is not the case  the terms can be found under the web address
http //owbunker com/wp-content/uploads/2013/12/OWB_GTC_ValidFrom01092013 pdf

### GUIDELINES FOR RECEIVING BUNKERS

We strongly urge you to forward the information regarding  General Instructions and Guidelines for Bunkering, for Receiving Vessels, on page 3, soonest possible to your Chief Engineer onboard Following the suggested Guidelines should minimize risk of quantity disputes Please bear in mind that barge figures are the sole valid quantity determination, wherefore Chief Engineer's attendance onboard the barge is extremely important

### OTHERWISE

Any errors or omissions in above Confirmation should be reported immediately

PLEASE INFORM US BY RETURN IF ABOVE NOMINATION DETAILS ARE NOT IN ACCORDANCE WITH YOUR UNDERSTANDING

# O.W. BUNKER (SWITZERLAND) SA
# OWB Switzerland  RS



GENERAL INSTRUCTIONS AND GUIDELINES FOR BUNKERING, FOR RECEIVING VESSELS

**BEFORE BUNKERING**

Please make sure to check all information given by the supplier on Bunker Requisition Form or such similar form as the supplier presents via the barge  If you notice changes in quantity or quality please urgently contact the relevant person in charge in your own operations to have same verified

Make sure to witness and verify initial measurements and ullaging onboard the barge before  ALL tanks to be checked and measured including actual temperature  of cargo – also including those tanks said not to be included in the particular supply (idle tanks)  Compare measurements and verify the quantities as per barge ullage tables  When in full agreement please sign the ullage/sounding report for Before Supply figures  If any disagreements with the measurements, temperature and thereby figures please advise this on the Sounding form or, if not allowed, on separate Letter of Protest (make sure to obtain signature and stamp from barge Master for receipt)

If surveyor attends please ensure the surveyor also participates in measuring all barge tanks before supply and verify the figures

**DURING BUNKERING**

Always place a watchman to witness safe operation including also proper and correct sampling  The watchman must ensure that sampling is done properly, as continuous drip sampling throughout the delivery, and that clean devices are used for sampling  Also the watchman must witness proper and correct division into minimum 4 (four) clean and new identical sample bottles, including proper labeling and sealing of ALL samples  Make sure original sample (cubitainer) is shaken vigorously for 3 minutes before splitting into the 4 sample bottles and that bottles are filled in several passes   All seal numbers to be inserted into the Bunker Delivery Receipt (BDR)  The MARPOL sample must be one of these samples drawn under witnessing

The watchman must pay special attention to the bunker hose  and any un-agreed attempts to transfer air via same should cause immediate stoppage unless the use of air  is caused by stripping of barge tanks, which stripping to be agreed in advance by both parties  If air is blown on continued basis, and stoppage on the supply not possible for any reason, the incident to be stated on a Letter of Protest, which should also contain  the time (hours from/to) that airblow was notified

It is known in some areas that the so called Cappucino Effect may be used or attempted to be used during supply  Pay special attention hereto and take all necessary precautions to observe, which includes
- During tank measurements before it should be notified whether there are signs of air on the measuring tape used for ullaging
- Look carefully for any signs of bubbles or similar on the surface of the fuel when it is still onboard the barge
- Agree with the barge when and if they are going to make stripping of their tanks
- Check and note the draft fore, mid and aft on the barge before and after supply to compare
- If any signs at all of cappuccino or similar (except eventual stripping, agreed in advance), please stop the supply immediately and compare supply quantities made so far
- Contact vessel operator in charge and request notification to the Seller and Supplier immediately
- If surveyor attending please ensure that the surveyor signs a Letter of Protest also
- After stopping the bunker supply please wait minimum 1 hour to await bubbles to disappear and re-measure the barge jointly with barge Master

**AFTER COMPLETION**

Repeat the measurement, sounding and ullaging of the barge  including verification of temperature of each tank  Make sure also on completion to verify contents of ALL tanks, including those being idle

Report (ullage) must be signed by all parties involved, including eventual nominated surveyor  If disagreements with the figures (mm, temperature) a Letter of Protest to be issued, but also such specific disagreements to be stated on the Ullage report covering "after" supply

**QUANTITY COMPLAINTS**

Receiving Vessel to inform discrepancies in writing latest upon completion of taking the bunkers

# EXHIBIT D

M/V  HELLAS GLORY IMO  9354612
AND/OR OWNERS/CHARTERERS



Clearlake Shipping Pte  Ltd
2 Battery Road
30-00 Maybank Tower
Singapore, 049907
Singapore
Mr Albert Saifulin

| | |
|---|---|
| DATE OF INVOICE : | 26  October 2014 |
| INVOICE NO        : | 157-15800 |
| ORDER NO | 157-15522 |
| ACCOUNT NO | 23004 |
| OUR REF | Richard Bjercke |
| DATE OF SUPPLY | 26  October 2014 |
| DUE DATE | 16  November 2014 |

PORT  HOUSTON
YOUR REFERENCE

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 1 739,990  MT | Fueloil 380-CST 3 5% | 514 00  MT | 894 354,86 |
| 75 000  MT | Gasoil 0 1% | 910 00  MT | 68 250 00 |
| 1 000  LPS | Harbour fee | 64 00  LPS | 64,00 |
| 1 000  LPS | Security Charges | 76 73  LPS | 76 73 |
| 1,000  LPS | Barging | 17 692 22  LPS | 17 692 22 |
| 1 000  LPS | Wharfage | 522 00  LPS | 522 00 |

| | | | |
|---|---|---|---|
| | Net Amount | USD   980 959 81 | |
| Your VAT No | VAT Amount | USD   0 00 | |
| Our VAT No   CHL-112 483 462 | Total | USD   980 959 81 | |

| Taxable Amount US | 0% VAT Amount USD | Amount incl VAT USD | Rate of exchange USD |
|---|---|---|---|
| 980 959 81 | 0 00 | 980 959 81 | 1 0000 |

The prices are excl all taxes and/or other fees

TERMS OF PAYMENT    21 days from date of delivery With value date not later than DUE DATE or previous working day
when it is a holiday  In case of delays in payment interest will be charged in accordance with our valid General Terms and Conditions

| | | | |
|---|---|---|---|
| **BANK** | ING Bank N V | | O W BUNKER SWITZERLAND S A WW |
| | | | 20 Rue Adrien Lachenal |
| **ACCOUNT** | IBAN  NL26 INGB 0020 1180 31 | USD and all other currencies | CH 1207 Geneva |
| | IBAN  NL10 INGB 0651 3696 81 | EUR | |
| | SWIFT  INGBNL2A | | +41 22 737 1620 |
| | | | +41 223 106 592 |
| | | | Email  geneva@owbunker com |

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account

# EXHIBIT E

# OW BUNKER GROUP

**Terms and Conditions of sale for Marine Bunkers**
**Edition 2013**

**A**       **GENERAL INTRODUCTION**

A 1       This is a statement of the terms and conditions according to which the
          International O W Bunker Group (hereinafter called  OWB ) will sell marine bunkers

A 2       These conditions apply to all offers  quotations  orders  agreements  services and all subsequent
          contracts of whatever nature  except where otherwise is expressly agreed in writing by OWB

A 3       General trading conditions of another party will not apply  unless expressly accepted in writing by OWB

A 4       In the case that  for whatever reason  one or more of the (sub)clauses of these general conditions are
          invalid  the other (sub)clauses hereof shall remain valid and be binding upon the parties


**B**       **DEFINITIONS**

B 1       Throughout this document the following definitions shall apply

| | |
|---|---|
| Seller | means OWB  any office  branch office  affiliate or associate of the OWB Group  being the legal entity within the OWB Group  whose name is included in the Order Confirmation  sent to the Buyer |
| Buyer | means the vessel supplied and jointly and severally her Master  Owners  Managers/Operators  Disponent Owners  Time Charterers  Bareboat Charterers and Charterers or any party requesting offers or quotations for or ordering Bunkers and/or Services and any party on whose behalf the said offers  quotations  orders and subsequent agreements or contracts have been made |
| Bunkers | means the commercial grades of bunker oils as generally offered to the Seller s customers for similar use at the time and place of delivery and/or services connected thereto |
| Owner | means the registered Owner  Manager or Bareboat Charterer of the vessel |
| Vessel | means the Buyer s Vessel  Ship  Barge or Off Shore Unit that receives the supply/bunkers  either as end user or as transfer unit to a third party |
| Nomination | means the written request/requirement by the Buyer to the Seller  for the supply of the Bunkers |
| Order Confirmation | means the written confirmation as issued by the Seller and forwarded to the Buyer to conclude the conclusion of the negotiated sale/purchase of the Bunkers  In case of conflict between the Nomination and the Order Confirmation  unless the Seller otherwise agrees in writing  the wording and content of the Order Confirmation is deemed contain the prevailing terms of the Agreement |
| Agreement | means the concluded terms for the sale/purchase of the Bunkers |
| Supplier | means any party instructed by or on behalf of the Seller to supply or deliver the Bunkers |
| GTC | means these General Terms and Conditions which shall govern the contractual regulations between the Seller and the Buyer |
| BDR | means the Bunker Delivery Receipt  being the document(s)  which is/are signed by the Buyer s representative(s) at the place of the supply of the Bunkers to the Vessel  evidencing the quality and quantity of the Bunkers supplied to and received by the Vessel |


**C**       **OFFERS  QUOTATIONS AND PRICES**

C 1       An Agreement shall only be concluded and binding on the Seller when the Seller sends the Order
          Confirmation to the Buyer  Each Order Confirmation shall incorporate these GTC by reference so that the
          GTC are considered a part of the Confirmation

C 2       Agreements entered into via brokers or any other authorised representative on behalf of the Seller  shall
          only bind the Seller upon the Sellers  broker or other authorised representative sending the Order
          Confirmation to the Buyer or the Buyer s broker as the case may be

C 3       The Seller s offer is based on the applicable taxes  duties  costs  charges and price level of components
          for Bunkers existing at the time of the conclusion of the Agreement  Any later or additional tax
          assessment  duty or other charge of whatever nature and however named  or any increase of
          components for Bunkers or any additional costs borne by the Seller whatsoever caused by any change
          in the Seller s contemplated source of supply or otherwise  coming into existence after the Agreement
          has been concluded  shall be added to the agreed purchase price  provided that the Seller shall give

the Buyer prior notice of this effect within a reasonable (under the prevailing circumstances) time after the Seller becoming aware of the relevant circumstances

C 4     All prices and/or tariffs are exclusive VAT unless specifically stated otherwise Any VAT or other charge and/or tax applicable and whenever imposed shall be promptly paid by the Buyer and unless otherwise agreed in writing all supplies are quoted and invoiced based on quantity calculated quantity in metric tons in vacuum

C 5     If the party requesting Bunkers is not the Owner of the Vessel the Seller shall have the right (but will not be obliged) to insist as a precondition of sale that a payment guarantee is provided by the Owner The Seller shall have the right (but will not be obliged) to cancel any agreement with the Buyer at any time if such payment guarantee is not received upon request thereof from the Seller to the Owner The Seller's decision to forego obtaining a payment guarantee under this Clause C 5 shall have no effect on Seller s right to a lien on the Vessel for any Bunkers supplied under this Agreement

C 6     The Buyer warrants that it is authorized as agent to order Bunkers for the Vessel and that the Seller has a lien on the Vessel for any Bunkers supplied under this Agreement If the party requesting Bunkers is not the Owner of the Vessel Buyer assumes the sole responsibility for communicating the terms and conditions of this Agreement to the Owner of the Vessel prior to the date of delivery

C 7     If at any time before the delivery the financial standing of the Buyer appears to the Seller (in its absolute discretion) to have become impaired or unsatisfactory the Seller may require cash payment or security to be provided by the Buyer prior to delivery failing which the Seller may cancel the delivery without any liability on the part of the latter or its subcontractors


**D        SPECIFICATIONS (QUALITY – QUANTITY)**

D 1     The Buyer assumes the sole responsibility for the choice of nominating the quantity and quality of Bunkers and determine (if applicable) potential compatibility with any Bunkers already on board the Vessel The Buyer also assumes sole responsibility for the selection and fitness of its choice of Bunkers for any particular use or purpose and the Seller shall assume no responsibility whatsoever for the compliance or fitness of the Bunkers for a specific type of engine or equipment which the Buyer may or may not have agreed upon in any C/P (Charterparty) term or otherwise This includes but is not limited to the quality sulphur content and any other specific characteristics of the Bunkers whatsoever Any and all warranties regarding the satisfactory quality merchantability fitness for purpose description or otherwise are hereby excluded and disclaimed
Where specifications designate a maximum value no minimum value is guaranteed unless expressly stated in the Order Confirmation and conversely where minimum values are provided in a specification no maximum values are guaranteed unless expressly stated in the Order Confirmation

D 2     The quality and quantity shall be as agreed between the Seller and the Buyer and shall correspond to the Seller s Order Confirmation Unless otherwise agreed in writing the Bunkers are delivered and sold based on metric tons in vacuum

D 3     Where standard specifications are being given or referred to tolerances in accordance with ISO 4259 in respect of Reproducibility/Repeatability in quality are to be accepted without compensation or other consequences whatsoever

D 4     In respect of the quantity agreed upon the Seller shall be at liberty to provide and the Buyer shall accept a variation of 5% from the agreed quantity with no other consequence than a similar variation to the corresponding invoice from the Seller

D 5     Information regarding the typical characteristics of the Bunkers at any delivery location shall only be indicative of the Bunkers that have been made available at that location and shall not form a part of the specification of the Bunkers to be delivered All grades of produce may contain petroleum industry allowed bio-derived components


**E.       MEASUREMENTS – NON CLAUSING OF THE BDR(S)**

E 1     The quantities of bunkers shall be determined only from the official gauge or meter of the bunkering barge tank truck or of the shore tank in case of delivery ex wharf

E 2     The Buyer s representative shall together with the Seller s representative measure and verify the quantities of Bunkers delivered from the tank(s) from which the delivery is made When supplied by bunkering barge/tanker the particular barge/tanker will present its tank calibration and ullage sounding records which are agreed to be the sole valid and binding document(s) to determine the quantity or quantities supplied Quantities calculated from the Receiving Vessel s soundings shall not be considered

E 3      Should the Buyer's representative fail or decline to verify the quantities, the measurements of quantities made by the Seller or the Supplier shall be final, conclusive and binding and the Buyer shall be deemed to have waived any and all claims in regard to any variance

E 4      The Buyer expressly undertakes not to make any endorsement, complaint/ comment (including but without limitation any ''No-lien'' clausing) on the BDR when presented for signature by the Buyer's representative(s), any such insertion shall be invalid and of no effect whatsoever

E 5      In the event of complaint/comment on the quantity of Bunkers delivered, the Buyer or the Master of the Vessel shall give to the Seller/Supplier a letter of protest separately, followed by a complaint in detail to the Seller, setting out the exact quantity(ies) claimed shortsupplied, and with full supporting vouchers in writing within 7 (seven) days thereof, failing which, any such claim by the Buyer shall be extinguished as non existent, and the Buyer shall be deemed to have expressly waived any such claim against the Seller/Supplier, the relevant claim being time barred, and the Seller/Supplier's weight and measurements shall be conclusive evidence of the quantity of Bunkers delivered

## F.      SAMPLING

F 1      The Supplier shall arrange for four (4) representative samples of each grade of Bunkers to be drawn throughout the entire bunkering operation. The Buyer's representative has the responsibility to witness that such samples are drawn, correctly and shall confirm his witnessing thereof and also confirm the proper and correct sealing by signing the labels of the sample bottles

F 2      In case that dripsampling is not available onboard the barge, tanktruck or shore tank, samples shall be taken as a composite of each tank from which supplies are made, onboard the barge (respectively at the shore tank or tanktruck) divided with 1/3 from each the top, mid and bottom of the tanks

F 3      The samples shall be securely sealed and provided with labels showing the Vessel's name, identity of delivery facility, product name, delivery date and place and seal number, authenticated with the Vessel's stamp and signed by the Seller's representative and the Master of the Vessel or his representative. The seal numbers shall be inserted into the BDR/Bunker Delivery Receipts, and by signing the BDR both parties agrees to the fact that the samples referred to therein are deemed valid and taken in accordance with the requirements as specified in this Chapter F

F 4      Two (2) samples shall be retained by the Seller for ninety (90) days after delivery of the Bunkers, or if requested by the Buyer in writing, for as long as the Buyer reasonably required. The other two (2) samples shall be retained by the receiving Vessel, one of which being dedicated as the MARPOL sample

F 5      In the event of a dispute in regard to the quality of the Bunkers delivered, the samples drawn pursuant to this Chapter F shall be conclusive and final evidence of the quality of the Bunkers delivered. One, and only one, of the samples retained by the Sellers shall be forwarded to an independent laboratory to perform a set of tests, the result of which is to be made available to both parties. Those test results shall be final and binding upon both Buyer and Seller as to the parameters tested. The parties are to use best endeavours to agree the independent laboratory to perform the tests. If, however, no agreement can be reached on the choice of laboratory within 3 days of the Buyer being advised of the Seller opting to have the sample tested, the Seller is at liberty to send the sample to a reputable and independent laboratory of its choice for the tests to be conducted, and those test result will be final and binding upon Buyer and Seller as set out above

F 6      The seal must be breached only in presence of both parties unless one/both in writing have declared that they will not be present, or fails to be present at the appropriate time and place, and both parties shall have the right to appoint independent person(s) or surveyor(s) to witness the seal breaking

F 7      No samples subsequently taken shall be allowed as (additional) evidence. If any of the seals have been removed or tampered with by an unauthorised person, such sample(s) shall be deemed to have no value as evidence

F 8      Any eventual samples drawn by Buyer's personnel either during bunkering or at any later date after bunkering shall not be valid as indicator of the quality supplied. The fact that such samples may eventually bear the signature of personnel on board the barge or tank truck or other delivery conveyance shall have no legal significance as such local personnel have no authority to bind Seller to different contractual terms. Seller shall have no liability for claims arising in circumstances where Buyer may have commingled the products on board the Vessel with other fuels

**G**        **DELIVERY**

G 1         The time of delivery as given by the Seller has been given as an approximate time unless it has been otherwise specifically agreed in writing between the parties

G 2         The time of delivery will only be binding upon the Seller when all information necessary for the Seller to comply with its obligations hereunder have been properly delivered to the Seller in reasonable time before the delivery In the event the Nomination addresses a spread of dates for delivery the Seller has the sole discretion to commence the delivery within any time day/night/sshinc of these dates always subject to the circumstances set out below in Clause G 3

G 3         The Vessel shall under all circumstances be bunkered as promptly as the prevailing circumstances permit having regard to congestion affecting the delivery facilities of Seller its Suppliers or Agents and prior commitments of barges or other delivery means The Seller and/or the Supplier shall not be liable for any consequences or any time lost due to the Vessel having to wait for berth for bunkering or for completion of bunkering and unless otherwise agreed in writing the Seller shall not be obligated to deliver prior to the nominated date or spread of dates The Seller is not responsible for delays caused by local customs pilots port or other authorities

G 4         In any case the Buyer unless otherwise agreed in writing must give not less than 72 (seventy two) hours approximate notice of readiness of the Vessel for delivery which is to be followed by 48 (forty eight) hours and 24 (twenty four) hours such notices where the last notice must also specify the exact place of delivery All these notices must be given to the Sellers and the Seller s representatives/agents in writing

G 5         The Seller shall be entitled to deliver the Bunkers by separate part deliveries in which case each part delivery shall be construed as a separate delivery

G 6         The Seller shall not be required to deliver any Bunkers if any customs and/or other government permit required for such purpose has not been obtained in due time before the delivery

G 7         If the Seller at any time for any reason believes that there may be a shortage of supply at any place and that as a result thereof it may be unable to meet the demands of all its customers the Seller may allocate its available and anticipated quantity/ies of Bunkers among its customers in such a manner as it may determine appropriate in its sole discretion

G 8         The Vessel shall be accessible at all times to Seller and Supplier and shall be bunkered as promptly as the circumstances permit The Seller and/or the Supplier shall not be liable for any demurrage paid or incurred by the Buyer or for any loss damage or delay of the Vessel (consequential and/or liquidating damages included) of any nature whatsoever due to congestion at the loading terminal prior commitments of available barges or tank trucks or any other reason

G 9         The Buyer shall ensure that the Vessel provides a free safe and always afloat and accessible side for the delivery of bunkers and that all necessary assistance as required by the Seller or the Seller s representative is rendered in connection with the delivery If in the Supplier s opinion clear and safe berth is unavailable delivery might be delayed or in Seller s option cancelled and all costs related to above will be on account of the Buyer

G 10        The Vessel shall moor unmoor hoist and lower bunkering hose(s) from the barge(s) whenever required by the Seller Seller s representative or Supplier free of expenses and in any way as may be requested to assist the barge equipment to a smooth supply The Buyer shall make and be responsible for all connections and disconnections between the delivery hose(s) and the Vessel s bunker intake manifold/pipe and ensure that the hose(s) are properly secured to the Vessel s manifold prior to commencement of delivery
            During bunkering the Vessel s scuppers must be safely blocked which blocking must be made by the Vessel s own crew Furthermore the Vessel must ensure that all pipes and manifolds and receiving tanks are properly checked and ready to receive the bunkers including but not limited to ensuring proper opening/closing of relevant valves without any risk for spillages etc during the bunkering
            Local further special requirements for receiving bunkers must be followed strictly by the Vessel whether advised or not by the Seller or the Seller s representative as it is always the Vessel and the Buyer who remains solely responsible for the knowledge and awareness of such eventual additional requirements for safety reasons

G 11        In the event that the Vessel is not able to receive the delivery promptly the Buyer is thereby in default and shall pay damages and/or any reasonable demurrage claim to the barging/supplying facilities and shall indemnify the Seller in each and every respect as a result thereof

G 12        Delivery shall be deemed completed and all risk and liabilities including loss damage deterioration depreciation contamination evaporation or shrinkage to the Bunkers delivered and responsibility for loss damage and harm caused by pollution or in any other manner to third parties shall pass to the Buyer

from the time the Bunkers reach the flange/connecting pipe line(s)/delivery hoses provided by the Seller on the barge/ tank truck/shore tank

G 13   If the Buyer for whatever reason is unable or refuses to receive the full quantity ordered the Seller shall have the right to invoice the Buyer for the loss incurred by having to transport the undelivered Bunkers back to the storage or by having to sell the Bunkers in a degraded form or at a lower price The Seller may exercise this right without prejudice to the Seller's other rights for damages or otherwise pursuant to these conditions

G 14   The Vessel shall provide and have appropriate and segregated tanks to receive the contracted quantity of Bunkers and the Vessel shall always be able to perform its own blending on board if any blending is deemed to be required by the Buyer The Vessel shall upon delivery test the Bunkers supplied by running her engines or auxiliaries or equipment for which the Bunkers are supplied for a minimum of 1 (one) hour to determine that the Bunkers are satisfactory In the event the Bunkers are not considered satisfactory the Seller and Supplier are to be notified in writing immediately after such test period has expired Otherwise it shall be deemed that the Bunkers were satisfactory and that in any event the Buyer has waived any right to claim in this regard

G 15   If delivery is required outside normal business hours or on local weekends Saturday Sunday national religious or public holidays the extra expenses incidental to such delivery shall be reimbursed by the Buyer as additional costs

G 16   In the event the Bunker delivery is made by vessel or barge as a ship to ship transfer any damage caused by contact and/or collision and/or swell and/or other weather or sea related condition or incident is to be dealt with by the Owners directly with the owners of the units involved and Seller/Supplier shall not be held nor be responsible for any such damages If however any of the involved units choose to pursue Seller and/or Supplier Buyer will fully indemnify and hold Seller harmless in relation thereto

G 17   For safety reasons it is agreed that it is solely the Master of the bunkering barge that determines whether mooring alongside is safe taking weather swell and forecasts into consideration Supplier/Seller not to be held responsible for any delays demurrages liquidating damages or similar whatsoever as a result of any eventual delays caused by any decision by the Master of the barge in this connection Supplies being always performed weather permitting

G 18   Without prejudice to any other article(s) herein any and all supply/ies will be based on as per best endeavours only if the receiving Vessel arrives outside the originally agreed time split as per the Order Confirmation forwarded

## H   TITLE

H 1   Title in and to the Bunkers delivered and/or property rights in and to such Bunkers shall remain vested in the Seller until full payment has been received by the Seller of all amounts due in connection with the respective delivery The provisions in this section are without prejudice to such rights as the Seller may have under the laws of the governing jurisdiction against the Buyer or the Vessel in the event of non payment

H 2   Until full payment of the full amount due to the Seller has been made and subject to Article G 14 hereof the Buyer agreed that it is in possession of the Bunkers solely as Bailee for the Seller and shall not be entitled to use the Bunkers other than for the propulsion of the Vessel nor mix blend sell encumber pledge alienate or surrender the Bunkers to any third party or other Vessel

H 3   In case of non or short payment for the Bunkers by the Buyer the Seller is entitled (but not obliged) to repossess the Bunkers without prior juridical intervention without prejudice to all other rights or remedies available to the Seller

H 4   In the event that the Bunkers have been mixed with other bunkers on board the Vessel the Seller shall have the right to trace its proprietary interest in the Bunkers into the mixed bunkers and/or a right of lien to such part of the mixed bunkers as corresponds to the quantity or net value of the Bunkers delivered

H 5   The provisions of this Chapter H do not prejudice or in any way limit the Seller's right to arrest/attach the Vessel and/or sister ship and/or any sister or associate ship and/or other assets of the Buyer (or the Owner of the Vessel or any other party liable) wherever situated in the world without prior notice

H 6   Where notwithstanding these conditions title in and to the Bunkers delivered has passed to the Buyer and/or any third party before full payment has been made to the Seller the Buyer shall grant a pledge over such Bunkers to the Seller The Buyer shall furthermore grant a pledge over any other Bunkers present in the respective Vessel including any mixtures of the delivered Bunkers and other bunkers Such pledge

will be deemed to have been given for any and all claims of whatever origin and of whatever nature that the Seller may have against the Buyer

H 7     For the avoidance of doubt, where a mortgagee bank enforces any rights against the Vessel and becomes a mortgagee in possession of the Bunkers then as bailee the mortgage bank is liable to the Seller for fulfilment of the Agreement


## I.     PAYMENT – MARITIME LIEN

I 1     Payment for the Bunkers and/or the relevant services and/or charges shall be made by the Buyer as directed by the Seller within the period agreed in writing

I 2     Payment shall be made in full without any set-off counterclaim deduction and/or discount free of bank charges to the bank account indicated by the Seller on the respective invoice(s)

I 3     (i) If at any time after delivery but before the due date the financial standing of the Buyer appears to the Seller (in its sole discretion) to have become impaired or unsatisfying, the Seller may require immediate full payment of all its invoices due and/or those not yet due or such security as it shall deem to be satisfactory
(ii) In the event that the Buyer shall default in making any payment due, the Seller may suspend deliveries of Bunkers until such payment has been made in full (together with default/delay compensation and costs) or the Seller may in its discretion elect to treat such default as a serious breach of the Agreement and thereupon terminate the Agreement on whole or in part without prejudice to any claim against the Buyer for damages including cancellation charges Such termination or suspension shall not relieve the Buyer of any obligation undertaken by virtue of an Agreement so terminated
(iii) Where the Seller has extended any kind of credit facility to a group of companies or associated companies default by any one relevant Buyer in respect to any invoice of the Seller shall give the right to the Seller to cancel all credit arrangements of the entire group or of all the associates whereupon sub clauses I 3 (i) and I 3 (ii) shall apply as appropriate
(iv) Where the Buyer fails to pay timely the Seller has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim The Seller may also unilaterally cancel any credit arrangements agreed with/extended to the Buyer
(v) All judicial and extrajudicial costs and expenses including pre-action costs fees expenses and disbursements of the Seller s lawyers/attorneys at law incurred in connection with non payment or delayed payment or by any other breach by the Buyer of these conditions shall be for the Buyer s account immediately payable by the latter to the Seller In case of litigation the Buyers shall also pay all the relevant expenses to the Seller including but without limitation all his reasonable attorneys/lawyers fees costs and disbursements

I 4     Payment shall be deemed to have been made on the date of which the Seller has received the full payment and such is available to the Seller If payment falls due on a non-business day the payment shall be made on or before the business day nearest to the due date If the preceding and the succeeding business days are equally near to the due date then payment shall be made on or before the preceding business day

I 5     Any delay in payment of the full sum due shall entitle the Seller to interest at the rate of 3 (three) per cent per month (compounded monthly for each month [or part thereof] of non payment) without prejudice to any rights or remedies available to the Seller Furthermore the Seller is entitled to charge a delayed payment administration fee of USD 1 50 per mton supplied or the equivalent thereof in local currency with a minimum administration fee of USD 350 00 for each delivery made All reasonable attorneys' fees incurred by Seller in connection with the collection of overdue payments shall be for the sole account of the Buyer

I 6     Payments made by the Buyer in respect of a supply of Bunkers shall at all times be credited in the following order (1) costs of any kind or nature, including but not limited to legal costs and attorneys' fees (2) interest and administrational fee, and (3) invoices in their order of age also if not yet due or in Seller's sole discretion to specify a payment to any such invoice Seller considers relevant

I 7     All costs borne by the Seller in connection with the collection of overdue payments, including those of the Seller's own legal and credit department and including but not limited to, reasonable attorneys' fees, whether made in or out of court and in general all costs in connection with breach of any agreement by the Buyer including but not limited to reasonable attorneys' fees shall be for the sole account of the Buyer

I 8     The Seller shall at all times in its absolute discretion be entitled to require the Buyer to provide the Seller what the Seller deems to be proper security for the performance of all of Buyer's obligations under the Agreement Failing the immediate provision of such security upon Seller's demand the Seller shall be

entitled to stop any further execution of any agreement(s) between the parties until such time as the Buyer has provided the required security

I 9      Where Bunkers are supplied to a Vessel in addition to any other security the Agreement is entered into and the Goods are supplied upon the faith and credit of the Vessel It is agreed and acknowledged that the sale of Bunkers to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Bunkers (and all interest and costs payable in respect thereof including but not limited to the reasonable attorney s fees) such maritime lien afforded to the Seller over the Vessel In any event any applicable Law shall not prejudice the right of the maritime lien of the Seller afforded hereunder or by any other applicable Law be it of the place of delivery or the flag of the Vessel or the place of jurisdiction and/or an arrest of the Vessel or otherwise howsoever

I 10     It is mutually agreed that the Bunkers provided by the Seller to the Buyer under the terms of this Agreement have been ordered by the Buyer in the ordinary course of business between Seller and Buyer All payments from Buyer to Seller for Bunkers supplied under this Agreement are deemed to have been made in the ordinary course of business between Seller and Buyer according to these ordinary business terms agreed between them

## J     CLAIMS

J 1     In addition to the obligations referred to in Article E 4 and E 5 herein any claim in connection with the quantity of the Bunkers delivered must be notified by the Buyer or the Master of the Vessel to the Seller or Supplier immediately after completion of delivery in the form of a letter of protest If the Buyer or the Vessel s Master fails to present such immediate notice of protest to the Seller or Supplier such claim shall be deemed to have been waived and shall be absolutely barred for all purposes

J 2     Always without prejudice to Article G 14 herein any and all claims concerning the quality of the Bunkers delivered or time consumed for the entire operation shall be submitted to the Seller in writing within 15 (fifteen) days after delivery with a clear statement as to the nature or the claim(s) along with appropriate supporting documentation failing which any rights to complain or claim compensation of whatever nature shall be deemed to have been waived and absolutely barred for all purposes

J 3     The Buyer shall be obliged to make payment in full and fulfil all other obligations in accordance with the terms of the Agreement and these conditions whether or not it has any claims or complaints If Buyer submits a claim against Seller with respect to the quality or quantity of the products supplied the Seller or the Seller s nominated representative shall be entitled to board the Vessel and investigate the Vessel s records log books engine logs etc and to make copies of any such document the Seller or the Seller s nominated representative may consider necessary for its investigations connected to the case The Buyer shall allow this or where Buyer has chartered the Vessel then the Buyer shall obtain authorization from Owner to allow the herein stated steps and to provide full assistance and support by the Vessel s officers and crew in any such manner the Seller or Seller s nominated representative may require Failure to allow boarding and/or produce required copies of documents and/or lack of full cooperation by the Vessel s officers and crew shall constitute a waiver of the Buyer s claim

J 4     The Seller shall be allowed and the Buyer Owner Officers and Crew onboard the receiving Vessel shall agree and in any way support and cooperate with Seller s representative to draw samples from the Vessel s storage tanks settling tanks and service tank and/or from before and after the Vessel s centrifuges to have extra tests carried out for such samples at independent laboratory

J 5     In each and every case any and all claims of the Buyer shall be timebarred unless arbitration/legal proceedings have been commenced/issued at the competent tribunal/court set forth in Chapter P hereof and served within 12 (twelve) months from the date of delivery of the Bunkers or the date that delivery should have commenced pursuant to the Order Confirmation from the Seller

## K     LIABILITY – LIMIT TO SELLER'S LIABILITY

K 1     The Seller and/or Supplier shall not be liable for damages of whatever nature including physical injury nor for delay of delivery of Bunkers or services no matter whether such damages or delay have been caused by fault or negligence on the side of the Seller The Seller shall furthermore not be liable for damages or delay as described above when such damages or delay have been caused by the fault or negligence of its personnel representatives Supplier or (sub)contractors

K 2     Liabilities of the Seller for consequential and/or liquidated damages including but not limited to loss of time loss of cargo or charter cancelling date loss of income or profit/earnings are excluded In any event and notwithstanding anything to the contrary herein liability of the Seller shall under no

circumstances exceed the invoice value of the Bunkers supplied under the relevant agreement to the relevant Vessel

K 3      The Buyer shall be liable towards the Seller and herewith undertakes to indemnify the Seller for any and all damages and/or costs suffered or otherwise incurred on the Seller due to a breach of contract and/or fault or neglect of the Buyers its Supplier agents Servants (sub)contractors representatives employees and the officers crews and/or other people whether or not on board of the Vessel(s) The Buyer furthermore undertakes to hold the Seller harmless in case of any third party institutes a claim of whatever kind against the Seller whether direct or indirect relation to any agreement regulated by these terms and conditions Third party shall mean any other (physical or legal) person/company than the Buyer

K 4      No servant supplier or agent of the Seller/Supplier (including independent (sub)contractors from time to time employed by the Seller/Supplier) shall be liable to the Buyer for loss damage or delay while acting in the course of or in connection with its employment and/or agency for the Seller Without prejudice to the above every exemption limitation condition and liberty herein contained and every right exemption from or limit to liability defence or immunity of whatever nature applicable to the Seller or to which it is entitled hereunder shall also be available and shall extend to protect every such servant representative or agent of the Seller and/or the Supplier acting as aforesaid


## L      EXEMPTIONS AND FORCE MAJEURE

L 1      Neither the Seller nor the Seller s Supplier shall be liable for any loss claim damage delay or demurrage due to any delay or failure in their performance under this Agreement (a) by reason of compliance with any order or request of any government authority or person purporting to act therefore or (b) when supply of the Bunkers or any facility of production manufacture storage transportation distribution or delivery contemplated by the Seller or Supplier is interrupted delayed by congestion or other event (also see Article G 3 above) or by unavailability of product and/or barge equipment or by inadequate resource for any cause whatsoever which interruption delay unavailability or inadequate resources is not within the immediate control of the Seller or the Supplier including (without limitation) if such is caused wholly or partly by labour disputes strikes stoppages lock out governmental intervention wars civil commotion riot quarantine fire flood earthquake accident storm swell ice adverse weather or any act of God Neither the Seller nor the Supplier shall be required to remove any such cause or replace any affected source or supply or facility if doing so shall involve additional expense or a deviation from the Seller s or the Supplier s normal practices Neither the Seller nor the Supplier shall be required to make any deliveries which fail in whole or in part as a result of the causes set out in this Article at any later time

L 2      If the Buyer exercises reasonable diligence the Buyer shall not be liable for failure to receive any particular delivery if prevented therefrom by force majeure The Buyer shall indemnify the Seller or the Seller s supplier for any damage caused by the Buyer the Buyer s agent or employees in connection with deliveries hereunder

L 3      Declaration of Force Majeure shall be given without unduly delay once such event(s) have come to the knowledge of the respective party declaring same However under no circumstances and for no reason whatsoever can Force Majeure entitle the Buyer not to pay promptly any invoice of the Seller

L 3      In the event that the Seller as a result of force majeure can only deliver a superior grade of bunkers the Seller is entitled to offer the said grade and the Buyer must accept delivery thereof and pay the applicable price

L 4      (a)    These Terms and Conditions are subject to variation in circumstances where the physical supply of the Bunkers is being undertaken by a third party which insists that the Buyer is also bound by its own terms and conditions In such circumstances these Terms and Conditions shall be varied accordingly and the Buyer shall be deemed to have read and accepted the terms and conditions imposed by the said third party

         (b)    Without prejudice or limitation to the generality of the foregoing in the event that the third party terms include

         (i)    A shorter time limit for the doing of any act or the making of any claim then such shorter time limit shall be incorporated into these terms and conditions

         (ii)    Any additional exclusion of liability clause then same shall be incorporated mutatis mutandis into these

         (ii)    A different law and/or forum selection for disputes to be determined then such law selection and/or forum shall be incorporated into these terms and conditions

(c)   It is acknowledged and agreed that the buyer shall not have any rights against the Seller which are greater or more extensive than the rights of the supplier against the aforesaid Third Party

## M        BREACH/CANCELLATION

M 1       Without prejudice to any other remedies and rights  the Seller shall have the option immediately to cancel the Agreement in full or in part  or to store or procure the storage of the Bunkers  in whole or in part  for the account and risk of the Buyer and to charge the Buyer the expenses thereby incurred  or to hold the Buyer fully to the agreement  or take any other measures which the Seller deems appropriate without prejudice to its rights of indemnification  without any liability on the side of the Seller  in any one of (but not limited to) the following cases

         a)       when the Buyer  for whatever reason  fails to accept the Bunkers in part or in full at the place and time designated for delivery

         b)       when the Buyer fails in part or in full to comply with its obligations to pay any amount due to the Seller and/or provide security as set out in these GTC

         c)       when  before the date of delivery  it is apparent in the opinion of the Seller that the financial position of the Buyer entails a risk to the Seller

         d)       when  in case of force majeure  the Seller is of the opinion that the execution of the agreement should be cancelled

M 2       The Seller may terminate any Agreement with the Buyer in whole or in part  in its full discretion  upon the breach of any provisions hereof by the Buyer or in the event that the Buyer fails to make or suspends payment  ceases to carry on business  makes an arrangement with its creditors or undergoes any form of bankruptcy  administration  re organisation or asset rearrangement

M 3       The Seller has the option to immediately cancel the Agreement for the account and risk of the Buyer if at any time the Seller  in its sole discretion  has reasonable grounds to believe that

         a)       The Vessel  or

         b)       The Charterer of the Vessel  or

         c)       The fully or partly Owner(s) of the Vessel  or

         d)       Any officers of the Vessel  or

         e)       The Operator and/or Manager of the Vessel  or

         f)       Any other person or entity in any way related to the Agreement or delivery is/are

         1)    Iranian(s)  or

         2)    Related in any way to Iran or Iranians  or

         3)    Listed on the US OFAC Specially Designated Nationals List  or

         4)    Covered by any US  UN  and/or EU sanctions  or

         5)    Covered by any sanctions of any other jurisdiction and/or administration

Under no circumstances can the Seller be held liable for any loss  delays  claims or damages of whatever kind suffered by the Buyer due to a cancellation under this Article

The Buyer must inform the Seller immediately the Buyer becomes aware of or has reasons to believe that any of the above items a) to f) in combination with any of the above items 1) to 5) are fulfilled/apply

Should the Buyer breach its obligation to inform the Seller  the Buyer shall fully indemnify and keep the Seller harmless for any damage or loss caused by such breach  including consequential or liquidated damages

M 4       The Buyer acknowledges that any agreements with the Seller and any actions related to such agreements as well as any interaction with third parties related to such agreements are covered by certain anticorruption laws and regulations which can include any anticorruption law  including but not limited to the U S  Foreign Corrupt Practices Act ( FCPA ) and the UK Bribery Act  Therefore  the Buyer declare to comply with all applicable anticorruption laws and regulations and agrees that the Buyer has not  and will not  offer  promise  pay or authorize the payment of any money or anything of value  or take any action in furtherance of such a payment  whether by direct or indirect means  to any public official or private individual to influence the decision of such person in the performance of his duties to a government or to his company  Any breach of this clause will void the related Agreement and in the sole discretion of the Buyer any other Agreement between the parties  making any claims for payment delivery or any other obligation of the Seller under this Agreement void  The Buyer is liable for all and any costs or losses incurred by the Seller due to such breach and/or an Agreement becoming void as a consequence

## N        SPILLAGE  ENVIRONMENTAL PROTECTION

N 1       If a spill occurs while the Bunkers are being delivered  the Buyer shall promptly take such action as is necessary to remove the spilled Bunkers and mitigate the effects of such spill  Without prejudice to the

generality of the foregoing the Seller is hereby authorised by the Buyer in the absolute discretion of the Seller but at the expense of the Buyer to take such measures and incur such expenses (whether by employing its own resources or by contraction with others) as are necessary in the judgment of the Seller to remove the spilled Bunkers and mitigate the effects of such spill The Buyer shall cooperate and render such assistance as is required by the Seller in the course of the action All expenses claims costs losses damages liability and penalties arising from spills shall be borne by the party that caused the spill by a negligent act or omission If both parties have acted negligently all expenses claims losses damages liability and penalties shall be divided between the parties in accordance with the respective degree of negligence The burden of proof to show the Seller s negligence shall be on the Buyer The Buyer shall give the Seller all documents and other information concerning any spill or any programme for the prevention thereof that is required by the Seller or is required by law or regulation applicable at the time and place of delivery

## O   DELAYS AND CANCELLATIONS

O 1   Notwithstanding anything else to the contrary herein and without prejudice to any rights or remedies otherwise available to the Seller the Buyer by its acceptance of these conditions expressly agrees that Seller has the sole discretion to cancel or to adjust prices in the event the Vessel is suffering a delay exceeding 24 hours from the (last) nomination date

O 2   If the Buyer for whatever reason (including circumstances entirely outside Buyer s control) cancels the Agreement where Order Confirmation has been sent by Seller the Buyer shall be liable for any and all losses suffered and liabilities incurred by the Seller and/or the Supplier as a result of such cancellation including but not limited to barge costs re storing of the Bunkers and hedging costs and also in Seller s sole option any difference between the contract price of the undelivered product and the amount received by the Seller upon resale to another party or if another buyer cannot be found any market diminution in the value of the product as reasonably determined from available market indexes These losses and liabilities shall be indemnified by a minimum amount of USD 4 000 by way of agreed minimum liquidated damages and shall be indemnified in full if they in total exceed USD 4 000

## P   LAW AND JURISDICTION

P 1   This Agreement shall be governed and construed in accordance with English law
The 1980 United Nations Convention on Contracts for the International Sale of Goods (CISG) shall not apply
Except for circumstance referred to in Clause P 5 below all disputes arising in connection with this Agreement or any agreement relating hereto save where the Seller decides otherwise in its sole discretion shall be finally settled by arbitration in London England in accordance with the Arbitration Act 1996 (or any subsequent amendment)

P 2   In the event that the Seller determines to refer any dispute to arbitration it shall be referred to a tribunal of three arbitrators consisting of one arbitrator to be appointed by the Seller one by the Buyer and one by the two arbitrators already appointed Each member of the tribunal shall be a full member of The London Maritime Arbitrators Association (the LLMA ) Either party may call for Arbitration by service of written notice specifying the name and address of the arbitrator appointed and a brief description of the dispute(s) or difference(s) to be the subject or the Arbitration If the other party does not within 14 days serve notice of appointment of an arbitrator to arbitrate the dispute(s) or difference(s) then the first moving party shall have the right without further notice to appoint its own arbitrator as sole arbitrator and shall subsequently advise the other party accordingly The award of the sole arbitrator shall be binding on both parties as if he had been appointed by agreement Provided each party appointed their own arbitrator then these two arbitrators shall jointly appoint the third arbitrator In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator either party may apply to the English courts for the appointment of a third arbitrator
Any disputes to be referred to Arbitration are to be determined in accordance with the current LMAA terms unless the parties agree otherwise

P 3   Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator

P 4   In cases where neither the claim nor any counterclaim exceeds the amount of USD 100 000 (or such other sum as the parties may agree) the Arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced

P 5   The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien regardless of the country in which Seller takes legal action Seller shall be entitled to assert

its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim arisen in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York.

P 6     If any procedure of any nature whatsoever is instituted under Clause P.5 above, in connection with any controversy arising out of this Agreement or to interpret or enforce any rights under this Agreement, the prevailing party shall have the right to recover from the losing party its reasonable costs and attorneys' fees incurred in such proceeding.


## Q.     VALIDITY

Q.1     These terms and conditions shall be valid and binding for all offers, quotations, prices and deliveries made by the O.W. Bunker Group, any associated company, representative or agent as of September 1, 2013, or at any later date.

Q.2     These terms and conditions are available at the website www.owbunker.com, on which site as well the Sellers may notify amendments, alterations, changes or verifications to same. Such amendments, alterations, changes or verifications are deemed to be a part of the entire terms once same have been advised on the website.

# EXHIBIT F

**From:** Downs, Andy [mailto:Andy.Downs@nustarenergy.com]
**Sent:** 13 November 2014 17.27
**To:** Albert Saifulin
**Subject:** RE: Fuel Invoice - Venus Glory / Hellas Glory

Albert,

Please find attached

**Andy Downs**
Director Supply and Trading
NuStar Energy L P

Direct  210-918-2057
Fax  210-918-7077
Cell  210-485-8133
E-Mail  andy.downs@nustarenergy.com
Yahoo ID  adowns55



www.nustarenergy.com

The information contained in this message is privileged and confidential  and is intended only for the use of the individual named above and others who have been specifically authorized to receive it. If you are not the intended recipient  you are hereby notified that any dissemination  distribution or copying of this communication is strictly prohibited  If you have received this communication  in error  or if any problems occur with transmission  please contact Sender or call (210 918 4254)  Thank you

**From:** Albert Saifulin [mailto:albert.saifulin@tarcona.com]
**Sent:** Thursday, November 13, 2014 9 24 AM
**To:** Downs, Andy
**Subject:** RE  Fuel Invoice - Venus Glory / Hellas Glory

Dear Mr Downs,

Thank you for your message of 11 November which we are considering   To assist us in that consideration can you please provide us with a copy of your contract of sale and/or confirmation of sale with OW Bunker USA and any general terms of business to which the sale was subject

We thank you in anticipation

with best regards
Albert Saifulin   mobile +3725041455
AS Tarcona as agents to Clearlake Shipping PTE Ltd
direct phone +372-6110428
e-mail  albert.saifulin@tarcona.com, claims@tarcona.com

**From:** Downs, Andy [mailto:Andy.Downs@nustarenergy.com]
**Sent:** 11 November 2014 17:34
**To:** Albert Saifulin; Claims
**Subject:** Fuel Invoice - Venus Glory / Hellas Glory

Dear Albert Saifulin:

This email will follow up our correspondence on 11 November 2014.

On 10/05/14, NuStar Energy Services, Inc. sold fuel oil to OW Bunker USA Inc. as the agent for the vessels Venus Glory and Hellas Glory.  A copy of the invoice for the transaction is attached.

As you probably already know, OW Bunker USA Inc. is in financial distress and it has advised us that it will not pay the invoice. We therefore ask that vessel interests immediately pay the invoice directly to NuStar. Additionally, please be advised that NuStar has asserted its right to reclaim the fuel oil.

If we do not receive payment promptly, we may have no choice but to assert a maritime lien against the vessel.  We trust, however, that this will not be necessary.

Please contact me immediately to discuss this matter.

This email is sent without prejudice, and we reserve all rights.

Best regards,


**Andy Downs**
Director Supply and Trading
NuStar Energy L P

Direct  210-918-2057
Fax  210-918-7077
Cell  210-485-8133
E-Mail  andy.downs@nustarenergy.com
Yahoo ID. adowns55




www.nustarenergy.com

The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please contact Sender or call (210-918-4254)  Thank you

# EXHIBIT G



**NuStar Energy Services Inc.**
PO BOX 781609
San Antonio TX. 78248

## SALES AGREEMENT

| **Organizational Data** | | **Contract Terms** | |
|---|---|---|---|
| Deal Sheet No | 20151548 | Payment Terms | WIRE 30 CAL DAYS FROM DELIVERY |
| Contract No | 40213159 | Interest of 18% per annum will apply to late payments | |
| Sold to | 109364 | Vessel | VENUS GLORY |
| | O W BUNKER USA INC | ETA Date | 10/18/2014 00 00 00 to 10/19/2014 00 00 00 |
| | 2603 AUGUSTA DRIVE | Port | HOUSTON |
| | Houston TX 77057 | Agent | LBH |
| | | Broker | |
| | | Nomination Date | 10/14/2014 |

NuStar Energy Services Inc ( Seller ) agrees to sell and deliver and O W BUNKER USA INC ( Buyer ) agrees to purchase receive and pay for the following product(s) in accordance with the terms and provisions of this Sales Agreement and the General Terms and Conditions incorporated herein by this reference Copy available upon request

### ITEM 000010

| | | | | | |
|---|---|---|---|---|---|
| Material | IFO380 Intermediate Fuel Oil 380 | | | | |
| Quantity | 615 000 MT | | | | |
| Formula Pricing Information | 100 % PLATT S CLOSE / SETTLEMENT PUAFZ00 NO 6 3 0 USGC WATER | | | | |
| Diff Price | + 1 150000/BB6 | | | | |
| Item Note | | | | | |

**SECONDARY CHARGES**

| | | | | |
|---|---|---|---|---|
| Harbor fees IFO | 32 000000 | US$ | per | 1 EA |
| Security fee | 0 044100 | US$ | per | 1 MT |
| Wharfage fee | 0 300000 | US$ | per | 1 MT |
| Barging + surcharge | 10 168000 | US$ | per | 1 MT |
| Barging + srchg(min) | 10 980 200000 | US$ | per | 1 EA |

Quality
All fuel oil supplied is in accordance with specifications set by ISO 8217 2010(E) and conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78 unless otherwise noted
Samples
MARPOL sample will be taken in accordance with supplier s commercial sampling procedures
Notes
By accepting the above described bunkers the purchaser agrees that it may not set off against the purchase price of the bunkers any sums the purchaser contends are owed to it by NuStar Energy Services Inc for any reason
**Sales And Use Tax Exemption** Fuel sold under this agreement will be used to operate vessels in interstate or foreign commerce Any vessel not operated in interstate or foreign commerce will be responsible for any and all taxes associated with the delivered bunker fuel



NuStar Energy Services, Inc.
19003 IH-10 West
San Antonio TX. 78257
1-800-711-5257

Order NO. 282527     Delivery NO. 2420088732     Customer NO. 109364

BILL TO:
O.W. BUNKER USA, INC
2603 AUGUSTA DRIVE
Houston, TX 77057

| WIRING INSTRUCTIONS: | | CONTRACT NO: | 40213159 |
|---|---|---|---|
| NuStar Energy Services, Inc. | | SHIPPING ORDER: | 173432 |
| JPMorgan Chase Bank, N.A. | | DELIVERY DATE: | 10/20/2014 |
| New York, NY | | ORIGIN: | B620 Texas City Vessel Bunkering |
| ABA: 021000021 | | PORT: | HOUSTON |
| Acct Nbr. 323391729 | | TERMS OF DELIV: | Vessel Intake Flange |
| SWIFT Code: CHASUS33 | | VESSEL: | VENUS GLORY |
| | | BROKER: | |

NOTE:

| PRICING ELEMENT | PRICE | QTY | UOM | BILLED |
|---|---|---|---|---|
| INTERMEDIATE FUEL OIL 380 | 472.900000  / MT | 615.590 | MT | 291,112.51 |
| Harbor fees-IFO | | | | 32.00 |
| Security fee | 0.044100 / MT | | | 27.15 |
| Wharfage fee | 0.30 / MT | | | 184.68 |
| Barging  + srchg(min) | | | | 10,980.20 |

Due in USD on 11/18/2014                                         302,336.54

TERMS:  WIRE 30 CAL DAYS FROM DELIVERY

NOTICE:  ALL COMMUNICATIONS OR QUESTIONS CONCERNING DISPUTED DEBTS, ARE TO BE SENT TO: NUSTAR ENERGY SERVICES -
ATTN: BUNKERDEPT.  PO BOX 781609 SAN ANTONIO, TX 78278-1609. FOR OTHER BILLING QUESTIONS:CALL 1-800-711-5257.



| API | 11.4 |
| DON | 1/0/1900 |

•

|  | **Platts FO No6 3.0%S USGC Waterborne** |
| **Date** | **Close** |
| 10/1/2014 | 81.65 |
| 10/2/2014 | 81.10 |
| 10/3/2014 | 79.74 |
| 10/6/2014 | 79.97 |
| 10/7/2014 | 78.70 |
| 10/8/2014 | 77.03 |
| 10/9/2014 | 75.10 |
| 10/10/2014 | 75.10 |
| 10/13/2014 | 74.05 |
| 10/14/2014 | 70.05 |
| 10/15/2014 | 68.50 |
| 10/16/2014 | 70.55 |
| 10/17/2014 | 71.10 |
| 10/20/2014 | 70.00 |
| 10/21/2014 | 70.15 |
| 10/22/2014 | 68.95 |
| 10/23/2014 | 70.50 |
| 10/24/2014 | 69.55 |
| 10/27/2014 | 69.30 |
| 10/28/2014 | 70.40 |
| 10/29/2014 | 71.15 |
| 10/30/2014 | 70.10 |
| 10/31/2014 | 69.65 |
| **Average** | 73.15 |
|  | 1.15 |
|  | 74.30 |
| **Premium** | **6.365** |

# EXHIBIT H



**NuStar Energy Services Inc.**
PO BOX 781609
San Antonio TX. 78248

<u>SALES AGREEMENT</u>

| **Organizational Data** | **Contract Terms** |
|---|---|
| Deal Sheet No.   20151547 | Payment Terms   WIRE 30 CAL DAYS FROM DELIVERY |
| Contract No.   40213160 | Interest of 18% per annum will apply to late payments |
| Sold to:   109364 | Vessel:   HELLAS GLORY |
|   O W  BUNKER USA  INC | ETA Date   10/22/2014 00 00 00 |
|   2603 AUGUSTA DRIVE | Port:   HOUSTON |
|   Houston, TX 77057 | Agent:   LBH |
|  | Broker: |
|  | Nomination Date   10/14/2014 |

NuStar Energy Services Inc ("Seller") agrees to sell and deliver, and O W  BUNKER USA, INC ("Buyer") agrees to purchase  receive  and pay for the following product(s)  in accordance with the terms and provisions of this Sales Agreement and the General Terms and Conditions incorporated herein by this reference  Copy available upon request

**ITEM 000010**

| Material | IFO380      Intermediate Fuel Oil 380 |
|---|---|
| Quantity | 1 740 000 MT |
| Formula Pricing Information | 100 % PLATT'S CLOSE / SETTLEMENT PUAFZ00 NO 6 3 0 USGC WATER |
| Diff Price | +  1 150000/BB6 |
| Item Note | |

**SECONDARY CHARGES**

| Charge | Amount | Currency | | Per | |
|---|---|---|---|---|---|
| Harbor fees-IFO | 32 000000 | US$ | per | 1 | EA |
| Security fee | 0 044100 | US$ | per | 1 | MT |
| Wharfage fee | 0 300000 | US$ | per | 1 | MT |
| Barging +  surcharge | 10 168000 | US$ | per | 1 | MT |
| Barging +  srchg(min) | 10 980 200000 | US$ | per | 1 | EA |

Quality

All fuel oil supplied is in accordance with specifications set by ISO 8217  2010(E) and conforms to regulations 14 and 18 of Annex VI of MARPOL 73/78 unless otherwise noted

Samples

MARPOL sample will be taken in accordance with supplier's commercial sampling procedures

Notes

By accepting the above described bunkers  the purchaser agrees that it may not set off against the purchase price of the bunkers any sums the purchaser contends are owed to it by NuStar Energy Services Inc  for any reason

**Sales And Use Tax Exemption**  Fuel sold under this agreement will be used to operate vessels in interstate or foreign commerce   Any vessel not operated in interstate or foreign commerce will be responsible for any and all taxes associated with the delivered bunker fuel



NuStar Energy Services, Inc.
19003 IH-10 West
San Antonio TX. 78257
1-800-711-5257

Order NO. 262615        Delivery NO. 2420088808        Customer NO. 109364

**BILL TO:**
O.W. BUNKER USA, INC
2803 AUGUSTA DRIVE
Houston, TX 77057

**WIRING INSTRUCTIONS:**
NuStar Energy Services, Inc.
JPMorgan Chase Bank, N.A.
New York, NY
ABA: 021000021
Acct Nbr. 323391729
SWIFT Code: CHASUS33

| | |
|---|---|
| CONTRACT NO: | 40213160 |
| SHIPPING ORDER: | 173480 |
| DELIVERY DATE: | 10/28/2014 |
| ORIGIN: | 8820 Texas City Vessel Bunkering |
| PORT: | HOUSTON |
| TERMS OF DELIV: | Vessel Intake Flange |
| VESSEL: | HELLAS GLORY |
| BROKER: | |

NOTE:

| PRICING ELEMENT | PRICE | QTY | UOM | BILLED |
|---|---|---|---|---|
| INTERMEDIATE FUEL OIL 380 | 472.900000  / MT | 1,739.990 | MT | 822,841.27 |
| Harbor fees-IFO | | | | 32.00 |
| Security fee | 0.044100 / MT | | | 76.73 |
| Wharfage fee | 0.30 / MT | | | 522.00 |
| Barging + surcharge | 10.168000 / MT | | | 17,692.22 |
| MARINE GAS OIL - DMA | 860.000000  / MT | 75.000 | MT | 64,500.00 |
| Harbor fees-MGO | | | | 32.00 |

Due in USD on 11/24/2014                                                               905,696.22

TERMS:  WIRE 30 CAL DAYS FROM DELIVERY

NOTICE:  ALL COMMUNICATIONS OR QUESTIONS CONCERNING DISPUTED DEBTS, ARE TO BE SENT TO: NUSTAR ENERGY SERVICES -
ATTN: BUNKERDEPT.  PO BOX 781609 SAN ANTONIO, TX 78278-1609. FOR OTHER BILLING QUESTIONS:CALL 1-800-711-5257.



**API**                              11.4
**DON**                    10/14/2014

| Date | Platts FO No6 3.0%S USGC Waterborne Close |
|------|-------|
| 10/1/2014 | 81.65 |
| 10/2/2014 | 81.10 |
| 10/3/2014 | 79.74 |
| 10/6/2014 | 79.97 |
| 10/7/2014 | 78.70 |
| 10/8/2014 | 77.03 |
| 10/9/2014 | 75.10 |
| 10/10/2014 | 75.10 |
| 10/13/2014 | 74.05 |
| 10/14/2014 | 70.05 |
| 10/15/2014 | 68.50 |
| 10/16/2014 | 70.55 |
| 10/17/2014 | 71.10 |
| 10/20/2014 | 70.00 |
| 10/21/2014 | 70.15 |
| 10/22/2014 | 68.95 |
| 10/23/2014 | 70.50 |
| 10/24/2014 | 69.55 |
| 10/27/2014 | 69.30 |
| 10/28/2014 | 70.40 |
| 10/29/2014 | 71.15 |
| 10/30/2014 | 70.10 |
| 10/31/2014 | 69.65 |
| **Average** | 73.15 |
|  | 1.15 |
|  | 74.30 |
| **Premium** | 6.365 |