James H. Hohenstein
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone:  212-513-3200
Telefax: 212-385-9010
Email:  james.hohenstein@hklaw.com
         marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Clearlake Shipping Pte Ltd*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLEARLAKE SHIPPING PTE LTD,

                      Plaintiff,

  - against -

O.W. BUNKER (SWITZERLAND) SA,
O.W. BUNKER USA INC., O.W. BUNKER
NORTH AMERICA INC., O.W. BUNKER
HOLDING NORTH AMERICA INC.,
NUSTAR ENERGY SERVICES INC., ING
BANK N.V.

                      Defendants.

14 Civ. _____ (   )

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR RESTRAINING ORDER PURSUANT TO 28 USC § 2361

Plaintiff Clearlake Shipping Pte Ltd ("Clearlake"), files this memorandum of law in support of its *Ex Parte* Motion for a Restraining Order Pursuant to 28 U.S.C § 2361 of the Federal Interpleader Act.

## STATEMENT OF FACTS

Clearlake filed its Complaint for Interpleader pursuant to 28 U.S.C. § 1335 to resolve competing claims to amounts owed pursuant to invoices for the sale and delivery of bunker fuel to its vessels Venus Glory and Hellas Glory (the "Vessels"). As set forth in its Complaint for Interpleader, filed herewith, Clearlake is faced with uncertainty as to the proper recipient of funds owed pursuant to the invoice for the sale.

On or about October 14, 2014, Clearlake ordered bunkers to be loaded onboard and consumed by the Venus Glory from OWBSSA. OWBSSA is apparently a corporate affiliate of OW USA, OW North America and OW Holding. The bunkers were to be supplied to the Venus Glory in Houston, Texas. According to OWBSSA's Sales Order Confirmation for this transaction, the "supplier" is identified as "NuStar." The bunkers were delivered to Venus Glory on October 20, 2014. An invoice was issued to Clearlake on October 20, 2014 by OWBSSA for the supply of bunkers to Venus Glory. The invoice directs payment of $327,637.29 to OWBSSA.

On or about October 14, 2014, Clearlake ordered bunkers to be loaded onboard and consumed by the Hellas Glory from OWBSSA. The bunkers were to be supplied to the Hellas Glory in Houston, Texas. According to OWBSSA's Sales Order Confirmation for this transaction, the "supplier" is identified as "NuStar." The bunkers were delivered to Hellas Glory on October 26, 2014. An invoice was issued to Clearlake on October 20, 2014 by OWBSSA for the supply of bunkers to Hellas Glory. The invoice directs payment of $980,959.81 to OWBSSA.

On or about November 11, 2014, Clearlake received an e-mail from NuStar. In the e-mail NuStar states that it "sold fuel to OW Bunker USA as the agent for the vessels Venus Glory and Hellas Glory….OW Bunker USA Inc. is in financial distress and it has advised us that it will not pay the [NuStar] invoice. We therefore ask that vessel interests immediately pay the invoice

2

directly to NuStar….If we do not receive payment promptly, we may have no choice but to assert a maritime lien against the vessel." NuStar later forwarded to Clearlake copies of the sales agreements and invoices between NuStar and OW USA pertaining to Venus Glory and Hellas Glory.

On or about November 13, 2014, OW USA, OW North America and OW Bunker Holding North America Inc. ("OW Holding") all filed voluntary petitions pursuant to Chapter 11 in the United States Bankruptcy Court for the District of Connecticut as Case Nos. 14-51720, 14-51721 and 14-51722.

Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (believed to include OWBSSA, OW USA, OW North America and OW Holding), and ING Bank N.V. as Security Agent, the O.W. entities have allegedly assigned certain rights in respect of their supply contracts as security to ING.

Due to the bankruptcy filings of the Defendants OW USA, OW North America and OW Holding, it is possible that NuStar or ING or another party will take action to collect the funds owed for the bunkers.

Under United States maritime law, it is undisputed that the contract supplier (such as OWBSSA) of necessaries, including fuel, to a vessel obtains a maritime lien against that vessel. Additionally, under certain circumstances, a physical supplier (such as NuStar) may also assert a maritime lien on that vessel.

As such, a number of claimants have already or may assert rights to amounts owed for the sale of necessaries to the Vessels, giving rise to a maritime lien under the Maritime Lien and Commercial Instruments Act, 46 U.S.C. § 31301 *et seq.*

3

In any event, Clearlake cannot ascertain whether the amount owed should be paid to OWBSSA OW USA, OW North America, OW Holding, NuStar or ING in order to extinguish all maritime liens against the Vessels and to prevent their arrest in this District or elsewhere.

The Vessels are due to call at various ports in the United States and could face arrest pursuant to Supplemental Admiralty Rule C by one or more of the defendants claiming to assert a maritime lien, which would cause harm to Plaintiff, delay the Vessels, affect innocent third parties with interests in the Vessels' cargo and generally inhibit maritime commerce.

## ARGUMENT

An interpleader action protects a disinterested stakeholder from multiple claims to a limited fund by providing a forum and procedure to adjudicate all competing interests. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534 (1967). Section 1335 expressly anticipates that interpleader is appropriate when a claimant "is claiming or may claim to be entitled to" funds at issue. Further, the Supreme Court has stated that the federal interpleader statute "is remedial and to be liberally construed." *Id.* at 533.

Once the requirements of interpleader are satisfied, the Court may issue an injunction to enjoin the claimants from instituting prosecuting any state or federal proceeding involving the subject property. *Companion Life Insurance Co. v. Schaffer,* 442 F. Supp. 826 (S.D.N.Y. 1977). With respect to injunctions, the Federal Interpleader Act provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants *and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.* . . .

4

> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361. (Emphasis added.)

The purpose of § 2361 is to relieve the stakeholder from the burden of defending multiple and conflicting actions and to make it possible for the Court to distribute the funds payable by the plaintiff, by entering an order restraining claimants from instituting or prosecuting proceedings in any state or federal court affecting the property involved in the interpleader. *See Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.,* 699 F. Supp. 2d 1344, 1351 (S.D. Fla. 2010). Injunctive relief will prevent a multiplicity of action and reduce the possibility of inconsistent determinations or the inequitable distribution of the funds. *U.S. v. Major Oil Corp.,* 583 F.2d 1152, 1158 (10th Cir. 1978). This injunctive power is nationwide and is intended to halt any proceeding deemed inconsistent with the interpleader action. *Id.; see also O'Daniel v Porter,* 240 F.2d 636 (D.C. Cir. 1957) (enjoining garnishment and foreclosure actions).

District courts have "extensive discretion under Section 2361 with regard to the issuance and the scope of the order." *Orseck,* 699 F. Supp. 2d at 1351; *see also Commerce & Indus. Ins. Co. v. Cablewave Ltd,* 412 F.Supp. 204, 206 (S.D.N.Y. 1976); 7 Wright and Miller, *Federal Practice and Procedure* § 1717. Accordingly, this Court may enjoin future arrests of the Vessel in any District Court and require the claimants to resolve their claims in this Court, a forum with jurisdiction where all proper parties are joined and the *res* is within the Court's jurisdiction. *See Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75 (10th Cir. 1955).

Many courts have permitted interpleader in the admiralty context. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550 (5th Cir. 2004) (Where two Rule B actions were commenced against freight owed, charterer filed action for interpleader, attachment actions were consolidated, and charterer was granted leave to deposit into court registry and was discharged from the lawsuit). *See also Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir. 1962) (where libel in personam and libel in rem filed for stevedoring services); *Defense Plant Corporation v. United States Barge Lines*, 145 F.2d 766 (2d Cir. 1944).

The injunction provided by 28 U.S.C. § 2361 is excepted from the requirements of Rule 65(b) of the Federal Rules of Civil Procedure by Rule 65(e)(2), which provides, in relevant part: "These rules do not modify ... 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader." Fed. R. Civ. P. 65(e). *See also Mitchum v. Foster,* 407 U.S. 225, 234 (1972); *United States v. Sentinel Fire Ins. Co.,* 178 F.2d 217, 231 (5th Cir. 1949). Accordingly, this Court has the power to enjoin, **without notice**, other actions seeking a determination of the rights being contested. *Prudential Ins. Co. of Am. v Shawver,* 208 F. Supp. 464, 471 (W.D. Mo. 1962); *Minnesota life Ins. Co. v. Creasy*, No. 14-11, 2014 WL 715556 (M.D.Ga Feb. 24, 2014) (issuing restraining order without notice); *Aetna Cas. & Sur. Co. v. Ahrens*, 414 F.Supp. 1235, 1242 (S.D.Tex. 1976) (issuing a restraining order without notice "to preserve the status quo" while considering the Court's interpleader jurisdiction and allowing for service of notice of the action after entry of injunction).

Clearlake is faced with a real threat of litigation consisting of the risk of the arrest of the Vessels at any port in the United States by any of the many claimants to the subject funds, making it impossible for Clearlake, as an innocent stakeholder to do business. An injunction will protect the jurisdiction of this Court and will prevent a multiplicity of actions against Clearlake who

disclaims any interest in the funds and is unable to determine the validity of any claimant's possible maritime lien on the Vessels or other claims related to the funds at issue.

## CONCLUSION

WHEREFORE, interpleader Plaintiff Clearlake requests that this Court enter an order pursuant to 28 U.S.C. § 2361 restraining any claimants now or later known from instituting and prosecuting any proceeding against Clearlake *in personam* or against the vessels Venus Glory and/or Hellas Glory *in rem*, including but not limited to the arrest of the vessels Venus Glory and/or Hellas Glory pursuant to Supplemental Admiralty Rule C in any United States District Court, based on the assertion of any claim related to the provision of bunkers described herein, and for such other and further relief as this Court deems just and equitable.

Dated:  New York, New York
            November 21, 2014

                              HOLLAND & KNIGHT LLP

                              By: _____
                              James H. Hohenstein
                              Marie E. Larsen
                              31 West 52nd Street
                              New York, New York 10019
                              Telephone:  212-513-3200
                              Telefax: 212-385-9010
                              Email:  jim.hohenstein@hklaw.com
                                         marie.larsen@hklaw.com

                              *Attorneys for Plaintiff Clearlake Shipping Pte Ltd*

#34090699_v1

7