James H. Hohenstein
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone:  212-513-3200
Telefax: 212-385-9010
Email:  jim.hohenstein@hklaw.com
           marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Clearlake Shipping Pte Ltd*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLEARLAKE SHIPPING PTE LTD,<br><br>                                    Plaintiff,<br><br>        - against -<br><br>O.W. BUNKER (SWITZERLAND) SA, O.W.<br>BUNKER USA INC., O.W. BUNKER<br>NORTH AMERICA INC., O.W. BUNKER<br>HOLDING NORTH AMERICA INC.,<br>NUSTAR ENERGY SERVICES INC., ING<br>BANK N.V.<br><br><br>        Defendants. | Case No. 14 Civ.  9287 (VEC) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISCHARGE FROM
LIABILITY, AWARD OF ATTORNEYS' FEES AND DISMISSAL FROM THE ACTION
WITH PREJUDICE**

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND ................................................................................................1

PROCEDURAL HISTORY ................................................................................................2

ARGUMENT ................................................................................................6

   I.     CLEARLAKE IS ENTITLED TO DISCHARGE BECAUSE THE
        REQUIREMENTS OF INTERPLEADER HAVE BEEN MET ......................................6

       A.    This Court Has Found that Interpleader Jurisdiction Is Proper ..................................7

       B.    Clearlake is a Disinterested Stakeholder who has Conceded Liability for
            Payment of the O.W. Bunker Invoice Amount and has Deposited Funds into the
            Court Registry Pursuant to the Deposit Order ............................................................8

   II.    CLEARLAKE IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS FOR
        THE FILING AND  CONDUCT OF THIS ACTION ....................................................10

CONCLUSION ................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A/S Krediit Bank v. Chase Manhattan Bank,*
303 F.2d 648 (2d Cir. 1962)..................................................................................12

*Connecticut General Life Ins. Co. v. Thomas,*
910 F.Supp. 297 (S.D. Tex. 1995) ...............................................................11, 12

*Guardian Life Ins. Co. v. Gilmore,*
45 F. Supp. 3d 310, 317-18 (S.D.N.Y. 2014) .............................................6

*Hapag-Lloyd Aktiengesellschaft v. U.S Oil Trading LLC,*
814 F.3d 146 (2d Cir. 2016)...................................................................8, 9

*Klebanoff v. Mutual Life Insurance Co. of New York,*
246 F.Supp. 935 (D. Conn. 1965)..............................................................10

*Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund,*
982 F.2d 783 (2d Cir. 1992).......................................................................6

*Merrill Lynch Pierce Fenner & Smith Inc. v. Clemente,*
2001 U.S. Dist. LEXIS 25 (S.D.N.Y. Jan. 2, 2001).................................10

*Metro. Life Ins. Co. v. Yitao Sun,*
2013 U.S. Dist. LEXIS 125729 (N.D. Ill. Sept. 4, 2013) .........................9

*Metropolitan Life Ins. Co. v. Mitchell,*
966 F. Supp. 2d 97 (E.D.N.Y. 2013) ........................................................11

*Murphy v. Travelers Ins. Co.,*
534 F.2d 1155 (5th Cir. 1976) ..................................................................10

*New York Life Ins. Co. v. Connecticut Development Authority,*
700 F.2d 91 (2d Cir. 1983).........................................................................7

*In re: O.W. Bunker Holding N. Am. Inc.*
No. 14-bk-51720 (Bnkr. D. Ct.).................................................................3

*Prudential Ins. Co. of Am. v. Hovis,*
553 F.3d 258 (3d Cir. 2009).......................................................................9

*Rhoades v. Casey,*
196 F.3d 592 (5th Cir. 1999) .....................................................................11

ii

*Schirmer Stevedoring Co. ltd. v. Seaboard Stevedoring Corp.*,
    306 F.3d 188 (9th Cir. 1962) .................................................................................13

*U.S. Trust Co. v. Alpert*,
    10 F. Supp. 2d 290 (S.D.N.Y. 1998)......................................................................9

*Wells Fargo Bank, N.V. v. ESM Fund I, LP*,
    785 F. Supp. 2d 188 (S.D.N.Y. 2011)..................................................................10

**Statutes**

28 U.S.C. § 1335..............................................................................................2, 6, 7, 8, 9

28 U.S.C. § 2361..................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 54............................................................................................................10

Plaintiff Clearlake Shipping Pte Ltd ("Clearlake" or "Plaintiff"), by and through its undersigned counsel, in accordance with this Court's order dated April 6, 2016 (Dkt. 158), files this memorandum of law in support of it motion to discharge Clearlake from further liability with respect to the fuel deliveries to the vessels M/V Venus Glory and M/V Hellas Glory (the "Vessels") which are the subject of this interpleader action, and further to discharge the Vessels from *in rem* liability with respect to the fuel deliveries.  Plaintiff further requests that it be awarded attorneys' fees in connection with the filing and conduct of the interpleader action, and that it be dismissed from the action with prejudice, and states as follows:

**FACTUAL BACKGROUND**

On or about October 14, 2014, Clearlake ordered bunkers to be loaded onboard the vessel Venus Glory from O.W. Bunker (Switzerland) SA ("O.W. Switzerland").  The bunkers were to be supplied to the Venus Glory in Houston, Texas.  To arrange for the provision of bunkers, O.W. Switzerland worked through its affiliated company, O.W. Bunker USA Inc. ("O.W. USA").  The bunkers were delivered to the vessel by third-party NuStar Energy Services Inc. ("NuStar"), pursuant to a contract between NuStar and O.W. USA.  An invoice was issued to Clearlake on October 20, 2014 by O.W. Switzerland for the supply of bunkers to Venus Glory, directing payment of $327,637.29 to O.W. Switzerland.

On or about October 14, 2014, Clearlake ordered bunkers to be loaded onboard the vessel Hellas Glory from O.W. Switzerland.  The bunkers were to be supplied to the Hellas Glory in Houston, Texas.  The bunkers were delivered to the vessel by third-party NuStar.  The contractual arrangements for this supply of bunkers among O.W. Switzerland, NuStar and O.W. USA was the same as described above.  An invoice was issued to Clearlake on October 20, 2014

by O.W. Switzerland for the supply of bunkers to Hellas Glory, directing payment of $980,959.81 to O.W. Switzerland.

Before the payments by Clearlake to O.W. Switzerland came due, on November 7, 2014, O.W. Bunker & Trading A/S and certain of its Danish subsidiaries and affiliates filed for bankruptcy in their home jurisdiction of Denmark. Thereafter many other O.W. entities and/or affiliates filed for bankruptcy in various other jurisdictions around the world and all these entities ceased doing business.[1]  On or about November 13, 2014, O.W. USA, O.W. Bunker North America Inc. or O.W. Bunker Holding North America Inc. (collectively, the "Debtors") all filed voluntary petitions pursuant to Chapter 11 in the United States Bankruptcy Court for the District of Connecticut as Case Nos. 14-51720, 14-51721 and 14-51722.

Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and its subsidiaries, and ING Bank N.V. ("ING") as Security Agent, many of the O.W. entities allegedly assigned certain rights in respect of their supply contracts as security to ING.

Neither O.W. Switzerland nor O.W. USA ever made payment to the underlying physical supplier NuStar.  Accordingly, Clearlake and the Vessels were faced with competing *in personam* and *in rem* claims for payment by NuStar and ING, as well as potential competing claims from other entities including O.W. Switzerland and the Debtors.

## PROCEDURAL HISTORY

Clearlake brought this interpleader action on November 21, 2014 pursuant to 28 U.S.C. § 1335 as a disinterested stakeholder with respect to funds owed for the sale and delivery of fuel to the Vessels. (Dkt. 1).  Clearlake and the Vessels were and are unable to determine the proper

---

[1] To date, only O.W. Bunker Germany GmbH has sought and obtained recognition pursuant to Chapter 15 of the United States Bankruptcy Code. Chapter 15 recognition is a prerequisite for any foreign entity in bankruptcy to litigate in the United States.

2

recipient of the funds, as between competing *in rem* and *in personam* claimants O.W. Switzerland, Clearlake's contractual counterparty; NuStar, the physical supplier of fuel to the Vessels; ING as purported assignee of receivables from various O.W Bunker entities; or certain other intermediary O.W. Bunker entities such as O.W. USA.

Also on November 21, 2014, Clearlake, individually and on behalf of the Vessels, filed two *Ex Parte* Applications for the entry of orders directing the deposit of interpleader funds into the Court's registry and restraining the arrest of the Vessels which are the subject of the interpleader action. This Court executed the proposed Orders on November 21, 2014. (Dkts. 4, 5). Subsequently, on November 25, 2014, after a telephone hearing before Judge Pauley (the then-assigned Judge), the orders were vacated, pending a determination that the chapter 11 automatic stay does not apply to an interpleader action where the Debtors are named as claimants to the funds sought to be deposited. (Dkts. 13, 18).

After the Deposit Order and Restraining Order were vacated, Clearlake entered into an escrow agreement with NuStar to prevent the arrest of the Vessels in the Southern District of Texas, where they were expected to arrive in due course. (Dkt. 20-7). The language of the escrow agreement contemplated that if Clearlake succeeded by way of a motion before the U.S. Bankruptcy Court for the District of Connecticut that the automatic stay does not apply, or in the alternative, lifting the stay, then such funds would be transferred from the escrow account into the Court's registry for the benefit of all interpleader claimants, including O.W. Switzerland, NuStar, the Debtors and ING. (*Id.* at ¶ 7).

Clearlake moved on December 23, 2014 for an order from the Connecticut Bankruptcy Court declaring that the automatic stay does not apply to the interpleader action, or in the alternative, modifying or lifting the automatic stay. *In re: O.W. Bunker Holding N. Am. Inc.* (No.

3

14-bk-51720) (Bankr. D. Conn.), Dkt. 224.   The hearing was adjourned several times due to various developments in the chapter 11 proceedings.

On August 10, 2015, this Court issued an Order to Show Cause why the Interpleader Complaint should not be dismissed for failure to meet the procedural requirements of interpleader – namely, that no funds were then on deposit with the Court. (Dkt. 82).   Clearlake filed a response to the Order to Show Cause on August 28, 2015. (Dkt. 83).  Also in response to the Order to Show Cause, Clearlake advanced the hearing date of its motion in the Bankruptcy Court to September 9, 2015 in order to obtain a determination on the automatic stay and to redeposit the funds into the S.D.N.Y. registry as soon as practicable.  (*See* Dkt. 90).   On September 10, 2015, the Bankruptcy Court entered an Agreed Order submitted by Clearlake, the Debtors, NuStar and the Committee of Unsecured Creditors granting relief from the automatic stay for the purposes of this interpleader action.  No. 14-bk-51720, Dkt. 895.  On September 24, 2015, this Court entered a Deposit Order and Amended Restraining Order.   (Dkts. 97, 98). Thereafter, counsel for NuStar (as escrow agent) presented a check to the Clerk of Court for the principal amount, and Clearlake presented a check for the 6% interest component.

All of the defendant-claimants have been served with a summons and the complaint in this action.

On December 12, 2014, NuStar filed an Answer to the Complaint, including a Verified Claim against the interpleader funds, and requesting the Court to issue a writ of arrest against the funds on deposit in order for NuStar to enforce its alleged maritime lien.  (Dkt. 20).  However, NuStar did not file a Motion for issuance of a warrant of arrest, as it did in certain other interpleader cases (*see* Civ. No. 14-cv-9720, Dkt. 27), therefore the request need not be ruled on by the Court.  However, even if the motion were properly made in this action, the Court has

already denied a similar request by NuStar (and O.W. USA) to arrest the funds (made on motion) in another case, noting that "it is unclear what NuStar and O.W. USA hope to gain by arresting the deposited funds" and finding that the arrest motion "should not affect the interpleader parties' substantive rights." (Civ. No. 14-cv-9720, Dkt. 112 at 4-5).

On December 8, 2015, ING filed an Amended Answer with Counterclaim against Clearlake based on a breach of contract theory, claiming contractual damages in the amount of the unpaid invoices, plus interests and costs. (Dkt. 125). As set forth in Clearlake's Answer to ING's Amended Counterclaim, this counterclaim against Clearlake actually consists of a claim against the interpleader funds, rather than an independent counterclaim for separate liability against Clearlake. (Dkt. 131).

On January 22, 2016, the Debtors filed a Notice of Entry of Order Confirming Debtors' First Modified Liquidation Plans, Notice of Disclaimer of Interest, and Request for Dismissal. (Dkt. 134). The Debtors disclaimed all interest in any claims relating the interpleader action and requested to be dismissed. The Court dismissed the Debtors on February 4, 2016. (Dkt. 138).

Concerning O.W. Switzerland, as the Court has been advised, O.W. Switzerland is currently engaged in settlement negotiations with ING. In any event, O.W. Switzerland is to respond by May 31, 2016 to the Order to Show Cause why Clearlake's motion for a default judgment should not be granted. (Dkts. 152, 154).

This action is one of thirty-one (31) related interpleader actions filed in this Court in connection with claims against vessel owners or charterers and their vessels for the non-payment of fuel delivered shortly before the O.W. Bunker collapse in November 2014. Of the thirty-one cases, twelve (12) cases proceeded through discovery in which pursuant to order of this Court

NYK Line fully participated including providing witnesses for deposition and complying with discovery requests from the Defendant claimants.

On April 6, 2016, this Court ordered that this action shall be selected as one of four "test cases" for briefing on various issues – including summary judgment motions by the defendant-claimants with respect to the merits of their claims, as well as plaintiffs' motions for discharge from the interpleader actions.  (Dkt. 158).

## ARGUMENT

### I.   CLEARLAKE IS ENTITLED TO DISCHARGE BECAUSE THE REQUIREMENTS OF INTERPLEADER HAVE BEEN MET

Interpleader actions typically proceed in two stages:  in the first stage a court determines the right of the party invoking interpleader to compel the claimants to litigate their claims to the stake in one proceeding – i.e., whether the statutory requirements of interpleader have been met. Typically, during this stage an interpleader plaintiff will also seek to be discharged from an action, and to have the court enter a permanent injunction against claims being brought against it, and then the court will proceed to the second step.  *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 317-18 (S.D.N.Y. 2014) (citing cases).  In the second stage of interpleader, a court will determine the respective rights of the claimants to the interpleader fund.  *Id.*

The interpleader statute authorizes a district court to discharge a stakeholder in any civil interpleader action from further liability to claimants.  "Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."  28 U.S.C. § 2361; *see also Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992).  Once an interpleader plaintiff has satisfied the § 1335 jurisdictional requirements of an interpleader claim, "[t]he court should readily grant discharge of the stakeholder, unless it

finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake." *New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2d Cir. 1983).

Clearlake respectfully submits that the requirements of interpleader having been satisfied, and the case having proceeded into the second stage, including the discovery having taken place from June 2015 through February 2016, that it should now be dismissed with prejudice from the action and fully discharged from all liability to the claimants in connection with the subject fuel deliveries. In addition, because of the *in rem* nature of many of the defendants' claims, the Vessels should also be discharged from *in rem* claims which are the subject of the interpleader.

## A.      This Court Has Found that Interpleader Jurisdiction Is Proper

The Court's interpleader jurisdiction in this case derives from the Federal Interpleader Act, in particular 28 U.S.C. §1335. Section 1335 provides, in relevant part, that:

> (a)      The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person…having in his or its custody or possession money or property of the value of $500 or more… or being under any obligation written or unwritten to the amount of $500 or more if (1) Two or more adverse claimants, of diverse citizenship…are claiming or may claim to be entitled to such money or property…, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid…the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable … conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
>
> (b)      Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. §1335.

In its initial pleadings, Clearlake alleged that it faced 1) adverse claims of greater than $500; 2) by two or more defendant-claimants of diverse citizenship (otherwise known as

"minimal diversity" – satisfied by the foreign and domestic claimants here, including NuStar and ING); and 3) that it was prepared to deposit the disputed funds into the Court registry.  Dkt. 1 at ¶ 9.

In its Memorandum Opinion and Order dated July 1, 2015, this Court found that it had subject matter jurisdiction over the competing *in personam* and *in rem* claims against Plaintiff and the Vessels under the interpleader statute.  Dkt 69. at 19 ("Because the *in personam* claims against the Vessel Interests and the *in rem* claims against the Vessels arise out of the same debt, they are 'inextricably interrelated,' and therefore subject to interpleader").  The Court's analysis has since been reaffirmed in the Second Circuit decision, *Hapag-Lloyd Aktiengesellschaft v. U.S Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016).

### B.      Clearlake is a Disinterested Stakeholder who has Conceded Liability for Payment of the O.W. Bunker Invoice Amount and has Deposited Funds into the Court Registry Pursuant to the Deposit Order

Section 1335(a) creates a requirement that the plaintiff deposit the disputed amount (or post a bond).  As set forth above, on November 21, 2014 Judge Pauley entered a Deposit Order allowing Clearlake to make a deposit of $1,308,597.10 into the registry to secure the claims of all defendants in this action.  (Dkt. 5).  On September 24, 2015 the Court entered an Amended Deposit Order providing for the deposit of 106% of the highest amount claimed on the fuel delivery invoices, and such amount was deposited.  (Dkt. 98).  Clearlake has admitted liability on payment of the O.W. Switzerland invoices in the amount of $1,308,597.10 and has disclaimed any interest in the funds on deposit up to that amount.  (Dkt. 1 at ¶ 27).

In its Memorandum Opinion and Order, the Court confirmed that the deposit of a single amount of security into the registry to secure the competing *in rem* and *in personam* claims was sufficient under the Interpleader Act:

8

> Although the Fuel Suppliers argue that their *in rem* claims against the Vessels must be "secure" in order for the Court to have subject matter jurisdiction under 28 U.S.C. § 1335, there is no such such [sic] requirement under this statute. Section 1335 only requires that the interpleading party pay "the amount due under such obligation into the registry of the court, there to abide the judgment of the court" or give "a bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." 28 U.S.C. § 1335(a)(2). The Vessel Interests either deposited funds or posted bonds measured by the amount of their "obligations" under the fuel supply contracts. That is sufficient to satisfy the requirements of Section 1335.

Dkt. 69 at 20, n. 8; *see also Hapag-Lloyd*, 814 F.3d at 153, n. 19. As the very nature of interpleader is to eliminate the risk of double liability by the interpleader plaintiff by bringing competing claims into a single forum for adjudication, the deposit of the funds into the registry is sufficient to secure all of the defendants' claims for payment of the invoice amount for the fuel delivered to the Vessel. *See Hapag-Lloyd*, 814 F.3d at 153 (acknowledging that the District Court may have to "untangle complicated questions of subrogation and set-offs among the parties as it determines payment obligations"). The amount on deposit being sufficient for these purposes and under the requirements of 28 U.S.C. § 1335, there is no need for Clearlake to continue as a party to the action.

Nor does the filing of a counterclaim by ING in its Amended Answer (or the request for arrest of the funds by NuStar, addressed above) require keeping Clearlake in this action. When a plaintiff is entitled to pursue interpleader relief, courts have consistently rejected counterclaims that are essentially based on the plaintiff having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants. *See, e.g.*, *U.S. Trust Co. v. Alpert*, 10 F. Supp. 2d 290, 293-294 (S.D.N.Y. 1998); *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258 (3d Cir. 2009) ("the bringing of an interpleader action protects [plaintiff] from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy"); *Metro. Life Ins. Co. v. Yitao Sun*, 2013 U.S. Dist. LEXIS

9

125729, 15-16 (N.D. Ill. Sept. 4, 2013) ("When an interpleader is properly asserted, counterclaims seeking payment of the interpleaded funds are disallowed."). Because ING's counterclaim arises from the same controversy which caused Clearlake to deposit the funds into the Court registry, the counterclaim fails as a matter of law and discharge is still appropriate. *Merrill Lynch Pierce Fenner & Smith Inc. v. Clemente*, 2001 U.S. Dist. LEXIS 25, *20-21 (S.D.N.Y. Jan. 2, 2001).

## II.   CLEARLAKE IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS FOR THE FILING AND CONDUCT OF THIS ACTION

Upon discharge and dismissal from this action, Clearlake respectfully requests that this Court grant it costs and attorneys' fees for filing and participating in this interpleader action, which brought all competing claims before this Court into a single forum, increasing judicial efficiency and avoiding the need for the parties to each individually pursue Clearlake and chase the Vessels to attach or arrest them to secure their maritime claims.[2]

The Court has broad equitable discretion in determining whether to award counsel fees and costs to the interpleader plaintiff, and if so, from what source they should be paid. *Klebanoff v. Mutual Life Insurance Co. of New York*, 246 F.Supp. 935 (D. Conn. 1965) (citing Moore's Federal Practice). A Court will generally award fees to a disinterested stakeholder required to participate in a dispute not of his own making. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976). A reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a

---

[2] Clearlake is cognizant of the fact that typically a motion for attorneys' fees is made post-judgment in accordance with Fed. R. Civ. P. 54(d)(2)(B)(i). However, given the course of these proceedings, Clearlake respectfully submits that the substantive right to attorneys' fees should be adjudicated at this juncture. *See Wells Fargo Bank, N.V. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 198 (S.D.N.Y. 2011) (considering motion for discharge and attorneys' fees at once, but reserving quantum to be determined in accordance with Rule 54). Accordingly, Clearlake submits it would not be appropriate (nor practical) at this juncture to adjudicate the quantum of an attorneys' fees award as such should be done post-discharge in accordance with the cited Rule.

discharge from liability." *Metropolitan Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (E.D.N.Y. 2013).   As set out above, Clearlake has satisfied all of the factors entitling it to attorneys' fees as it is a disinterested stakeholder who has conceded liability, and has deposited the interpleader funds into the Court registry.  Additionally, as can be seen from the many O.W. Bunker-related cases pending before this and other courts, this dispute was not of Clearlake's own making – indeed the inability of the claimants to agree as to which of them has a valid maritime lien (or other claim), or to otherwise settle their disputes prevented Clearlake from immediately making payment to a single claimant.

Where a case involves complex or unique issues, a court is even more likely to award attorneys' fees.  966 F. Supp. 2d at 104.  In *Rhoades v. Casey*, 196 F.3d 592 (5th Cir. 1999), the court awarded fees for tasks such as drafting the original interpleader complaint, locating all of the participants, answering motions to dismiss the interpleader action, and participating in settlement discussions.  The court noted that although it considered the sum requested to be high for a typical interpleader action, "[Plaintiff] did attempt to be discharged from the proceeding in February 1997. However, the district court declined to discharge [Plaintiff] until a final distribution of the [interpleader fund] was made." 196 F. 3d at 603.

Despite requesting to be discharged on numerous occasions, as can be seen from the docket of this case (currently consisting of 166 docket entries), the level of participation required of Clearlake as an interpleader plaintiff in the O.W. Bunker dispute has been unusually high.  Similarly, in *Connecticut General Life Ins. Co. v. Thomas*, 910 F.Supp. 297 (S.D. Tex. 1995), the interpleader plaintiff asserted that it "had to referee and participate at a level quite unusual in an interpleader action, and as a result incurred unnecessary attorneys' fees and costs." *Id.* at 305. The Court agreed, noting "[t]he tone of the filings in this case make clear that the relationship

11

between the parties has been extremely contentious... the parties began filing warring motions…" and that "the hostility between [claimants] and their litigation strategies has needlessly complicated this action and caused [Plaintiff] to incur unnecessary attorneys' fees and costs." *Id.*

From early on in the interpleader cases before this Court, despite being clearly eligible for and consistently requesting leave to file for discharge, Clearlake and the other vessel interests plaintiffs have faced all manner of contentious and repetitive challenges from the interpleader defendants. The contentious issues have included the subject matter jurisdiction of this Court, arguing in favor of double liability for plaintiffs, raising issues with respect to venue of the Debtors' bankruptcy, the scope of the restraining order, the impact of the automatic stay, arbitration and personal jurisdiction issues. *See, e.g.,* Dkts. 6, 44, 70, 71, 149. Similarly, Clearlake has been compelled to participate in discovery which has included the production of documents and presentation of deposition testimony.

Despite Clearlake's prompt effort to post full security for the fuel delivery claims into the court registry for the benefit of all claimants following the collapse of O.W. Bunker, the claimants continued to attempt to question the integrity of the interpleader process through these numerous motions in order to be free to seek their own independent security and recovery regardless of whether such acts would serve to impose double (or triple) liability on Clearlake through conflicting judgments in various jurisdictions. *See A/S Krediit Bank v. Chase Manhattan Bank*, 303 F.2d 648 (2d Cir. 1962) (party which properly invoked interpleader was entitled to costs and attorneys' fees, whose amount was due in "no small measure" to claimant's "unjustified resistance to interpleader").

These tactics and procedural history entitle Clearlake to recover attorneys' fees for its substantial participation in the litigation, to be paid from the principal deposit in the registry. That said, Clearlake acknowledges that the source of the funding of its award of attorneys' fees is within the discretion of the Court. *See Schirmer Stevedoring Co. ltd. v. Seaboard Stevedoring Corp.*, 306 F.3d 188, 194-95 (9th Cir. 1962) (noting court's discretion to award fees to be paid by the winning claimant, the losing claimant or divided between them).

## CONCLUSION

WHEREFORE, Plaintiff Clearlake Shipping Pte Ltd. respectfully requests that it and the vessels M/V Venus Glory and M/V Hellas Glory be discharged from any and all *in personam* and *in rem* liability with respect to the subject matter of this interpleader action, that it be dismissed with prejudice from the action, and that it be awarded attorneys' fees and costs in connection with the action.  Further, Clearlake requests that all funds deposited by Plaintiff into the Court registry over and above the O.W. Switzerland amount of $1,308,597.10, including specifically the 6% interest component be ordered returned to Clearlake.

Dated: May 13, 2016
New York, New York

HOLLAND & KNIGHT LLP

By: */s/ James H. Hohenstein*
James H. Hohenstein
Marie E. Larsen
31 West 52nd Street
New York, New York 10019
Telephone:  212-513-3200
Telefax: 212-385-9010
Email:  jim.hohenstein@hklaw.com
           marie.larsen@hklaw.com

*Attorneys for Plaintiff Clearlake Shipping Pte Ltd*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that, on May 13, 2016, a true and correct copy of the captioned document was served upon all counsel of record via ECF.

*/s/ James H. Hohenstein*
James H. Hohenstein

#40820748

14