USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/3/2017___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
CLEARLAKE SHIPPING PTE LTD,  :
                                                         :
                              Plaintiff,      :
                                                         :
            -against-                         :                14-CV-9287 (VEC)
                                                         :
O.W. BUNKER (SWITZERLAND) SA, O.W.  :
BUNKER USA INC., O.W. BUNKER NORTH  :
AMERICA INC., O.W. BUNKER HOLDING  :
NORTH AMERICA INC., NUSTAR ENERGY  :
SERVICES INC., ING BANK N.V.,         :
                                                         :
                              Defendants.  :
------------------------------------------------------------X
                                                         :
NIPPON KAISHA LINE LIMITED, individually  :
and on behalf of M/V RIGEL LEADER (IMO  :
No.9604940),                              :
                                                         :                14-CV-10091 (VEC)
                              Plaintiff,      :
                                                         :
            -against-                         :
                                                         :
O.W. BUNKER USA INC., NUSTAR ENERGY  :
SERVICES, INC., KIRBY INLAND MARINE  :
LP, ING BANK N.V.,                       :
                                                         :
                              Defendants.  :
------------------------------------------------------------X
HAPAG-LLOYD AKTIENGESELLSCHAFT,  :
                                                         :
                              Plaintiff,      :
                                                         :                14-CV-9949 (VEC)
            -against-                         :
                                                         :
U.S. OIL TRADING L.L.C., O.W. BUNKER  :
GERMANY GMBH, O.W. BUNKER &         :
TRADING A/S, ING BANK N.V. AND CREDIT  :
AGRICOLE S.A.,                          :
                                                         :
                              Defendants.  :
------------------------------------------------------------X

```
-------------------------------------------------------X
U.S. OIL TRADING LLC,                                   :
                                                        :
                                    Plaintiff,          :
                                                        :
                        -against-                       :              15-CV-6718 (VEC)
                                                        :
M/V VIENNA EXPRESS, her tackle, boilers,                :
apparel, furniture, engines, appurtenances, etc.,       :
in rem, and M/V SOFIA EXPRESS, her tackle,              :
boilers, apparel, furniture, engines, appurtenances,    :
etc., in rem, and HAPAG-LLOYD                           :
AKTIENGESELLSCHAFT, as claimant to the in               :
rem defendant M/V VIENNA EXPRESS,                       :
                                                        :
                                    Defendants.         :
                                                        :
------------------------------------------------------ X
                                                        :
   HAPAG-LLOYD AKTIENGESELLSCHAFT,                      :
   as claimant to the in rem defendant M/V             :
   VIENNA EXPRESS,                                      :
                                                        :
        Counter-Claimant and Third-Party Plaintiff,     :
                                                        :
                        -against-                       :
                                                        :
   U.S. OIL TRADING LLC,                                :
                                                        :
                        Counter-Defendant, and          :
                                                        :
O.W. BUNKER GERMANY GMBH, O.W.                          :
BUNKER & TRADING A/S, ING BANK                          :
N.V., CREDIT AGRICOLE CORPORATE                         :
AND INVESTMENT BANK, a division or                      :
arm of CREDIT AGRICOLE S.A.,                            :
                                                        :
                        Third-Party Defendants.         :
                                                        :
------------------------------------------------------ X
```

<u>ORDER AND OPINION</u>

VALERIE CAPRONI, United States District Judge:

This is the third chapter of the litigation before this Court arising out of the collapse and bankruptcy in November 2014 of O.W. Bunker & Trading A/S and its subsidiaries (collectively, "O.W."). O.W. was one of the world's largest suppliers of maritime fuel or "bunkers." *See Hapag-Lloyd*, Dkt. 232 (O.W. Germany Mem.) at 2.[1]  In the months and years following O.W.'s collapse, more than two dozen interpleader actions were instituted by vessel owners and charterers (the "Vessel Interests") who had purchased fuel from O.W. in the weeks immediately prior to its collapse but had not yet paid for the fuel. The purpose of the interpleaders is to resolve competing claims to payment on O.W.'s invoices from O.W.'s primary lender, ING Bank, O.W. itself, and O.W.'s physical suppliers.

On January 9, 2017, the Court took a significant step in that direction. The Court held that O.W., and not its physical suppliers, held maritime liens for "necessaries" in respect of the bunker deliveries. *See Clearlake Shipping PTE Ltd. v. O.W. Bunker (Switzerland) SA*, No. 14-CV-9287 (VEC) et al., 2017 WL 78514 (S.D.N.Y. Jan. 9, 2017) ("*O.W. II*"). Because O.W.'s suppliers did not assert any other claim to the interpleader stake, the Court's maritime liens decision largely resolves which party is entitled to payment.[2]

What was initially a three- or four-sided dispute is now primarily bilateral: remaining for decision are the Vessel Interests' motions to be discharged from liability; and *in personam* claims and counterclaims asserted by ING, O.W. Germany, and O.W. USA against the Vessel Interests. ING and the O.W. entities asserted contractual, *in personam* claims to the interpleader

---

[1]      Capitalized terms used herein and not defined have the meaning given in the Court's January 9, 2017 opinion as amended. The Court's citations to the record follow the convention used in the January 9, 2017 opinion.

[2]      The Court's maritime liens decision does not resolve whether O.W. validly assigned its rights to ING.

stake and counterclaims for breach of contract against the Vessel Interests for their failure to pay for the bunkers.  They moved for summary judgment on their *in personam* claims in three test cases: Case Nos. 14-CV-9287, 14-CV-9949, and 14-CV-10091.  For the reasons that follow, the Court GRANTS ING's and the O.W. entities' motions for summary judgment.

The Vessel Interests contend that they are entitled to be discharged from further liability in each of the test cases before the Court because the Court has already found that subject matter jurisdiction is proper and accepted the interpleader stake as an adequate substitute *res.*  Subject to the conditions described further in this Opinion and Order, the Court agrees.  Accordingly, the Court GRANTS Clearlake's motion for discharge in Case No. 14-CV-9287 and CONDITIONALLY GRANTS Nippon Yusen's motion for discharge in Case No. 14-CV-10091. The Court DENIES WITHOUT PREJUDICE Hapag-Lloyd's motion for discharge in Case No. 14-CV-9949.

## BACKGROUND

### 1.    Institution of the Interpleaders

The history of these cases is described at length in the Court's opinion on subject matter jurisdiction, *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*, No. 14-CV-9262 (VEC) et al., 2015 WL 4005527 (S.D.N.Y. July 1, 2015) ("*O.W. I*"), and its opinion on maritime liens, *O.W. II*, 2017 WL 78514.  In brief, following O.W.'s collapse, the Vessel Interests were subject to competing demands for payment from various O.W. entities, ING, and the Physical Suppliers.  *O.W. I*, 2015 WL 4005527, at *2.  In several instances, the Physical Suppliers attempted (or threatened) to arrest the vessels in order to get paid and, in at least one instance, a vessel was actually arrested.  *Id.*; *see Chemoil Latin Am. Inc. v. M/V Birch 6*, 15-CV-880 (VEC) (S.D.N.Y.).  Faced with the risk of multiple liability on the same debt and *seriatim* vessel arrests,

the Vessel Interests instituted interpleader actions pursuant to 28 U.S.C. § 1335(a) and sought injunctive protection from further attempts to arrest the vessels pursuant to 28 U.S.C. § 2361. *See, e.g.*, *Clearlake*, Dkt. 1 (Compl.) ¶¶ 8-11.  In most cases the Vessel Interests deposited into the Court's registry a bond or cash deposit equal to what was alleged to be the full amount owed on the O.W. invoices, plus 6% interest for the first year.[3]  *O.W. I*, 2015 WL 4005527, at *2; *see also* Fed. R. Civ. P. Supp. Rule E(5)(a).

In *O.W. I*, the Court concluded that subject-matter jurisdiction over these interpleaders was proper under the interpleader statute, 28 U.S.C. § 1335, and the Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333.  The Court held that the claimants'—O.W., the Physical Suppliers, and ING—*in personam* claims against the Vessel Interests and their statutory *in rem* claims to a lien are two sides of the same coin.  *See O.W. I*, 2015 WL 4005527, at *6 ("Both the [Physical Suppliers'] *in rem* claims against the [v]essels as well as any *in personam* claims that they . . . may ultimately choose to assert against the [Vessel Interests] spring from a single event: the [Physical Suppliers'] provision of fuel to the Vessels.").  Because "there is only one underlying debt," arising out of "a single obligation for the purchase of fuel," the Court concluded that the *in rem* rights of the claimants and their *in personam* rights against the Vessel Interests are "inextricably interrelated" and properly the subject of the interpleaders.  *Id.*

2.     **The Test Cases**

At the Court's direction, the parties identified three cases that would serve as "test cases" to litigate the parties' competing claims to the interpleader stakes.  *See O.W. II*, 2017 WL 78514, at *2.  The Physical Suppliers and, in certain cases, the O.W. entities and ING, asserted *in rem*

---

[3]     As is addressed more fully below, an arrest action was filed against one of the vessels in the Hapag-Lloyd test case, the *M/V Vienna Express*.  Hapag-Lloyd posted a Letter of Undertaking (LOU) in that action, and the LOU serves as a substitute res in respect of the *M/V Vienna Express*.

rights to the interpleader funds under the Commercial Instruments & Maritime Liens Act (CIMLA), 46 U.S.C. § 31342.  O.W. Germany, ING, and O.W. USA also moved for summary judgment on their *in personam* claims, each in a different test case.[4]  At the same time, the Vessel Interests moved for a discharge from further liability for the bunker deliveries.

In *O.W. II*, the Court held that O.W., and not the Physical Suppliers, held maritime liens on the interpleader funds.  Under CIMLA, a party that provides "necessaries" to a vessel "on the order of the owner of such vessel or a person authorized by the owner" is entitled to a lien for the value of the necessaries.  *O.W. II*, 2017 WL 78514, at *6 (quoting *Integral Control Sys. Corp. v. Consol. Edison Co. of N.Y.,* 990 F. Supp. 295, 298 (S.D.N.Y. 1998)).  The Physical Suppliers, which contracted with O.W. but which had no contractual relationship to the Vessel Interests, did not provide necessaries "on the order" of the Vessel Interests.  *Id.* at *10.  O.W., on the other hand, contracted directly with the Vessel Interests and "provided" necessaries to the vessels— albeit by subcontracting for delivery by the Physical Suppliers.  *Id.* at *12.

Now before the Court are the Vessel Interests' motions to be discharged from further liability and ING and the O.W. entities' motions for summary judgment on their *in personam* claims.[5]  These issues are related:  ING and the O.W. entities oppose discharging the Vessel Interests on the grounds that the stake in each of the test cases is insufficient to cover the interest

---

[4]     Specifically, in the Clearlake test case, ING appears to have moved for summary judgment on its *in rem* and *in personam* claims to the interpleader stake.  *See Clearlake*, Dkt. 173 (ING Mem.).  In the Nippon test case, O.W. USA moved for summary judgment on its *in rem* and *in personam* claims to the interpleader stake.  *See Nippon*, Dkt. 143 (O.W. USA Mem.).  In the Hapag-Lloyd test case, O.W. Germany moved for summary judgment on its *in personam* claim to the interpleader stake.  *See Hapag-Lloyd*, Dkt. 232 (O.W. Germany Mem.).  As is discussed below, ING did not move for summary judgment on its *in rem* claim in the Hapag-Lloyd test case, but it did ask the Court to disburse the funds to ING and O.W. Germany in accordance with their private arrangement.  *See Hapag-Lloyd*, Dkt. 235 (ING Mem.) at 22.  The Physical Suppliers moved for summary judgment on their *in rem* claims in each of the test cases.

[5]     Having found that they are not entitled to a maritime lien, the Physical Suppliers' remaining interest in these cases is limited because they asserted no other claims to the stake.  This opinion is without prejudice to the Physical Suppliers' rights to assert cross-claims against ING and the O.W. entities.

and fees to which they assert they are entitled on their *in personam* claims.[6]  The Vessel Interests

oppose ING's and the O.W. entities' motions for summary judgment on their *in personam* claims

to the extent they seek to recover for interest and fees in excess of the value of the stake.[7]

Despite the significant overlap in legal issues, each of the test cases presents these arguments in a

slightly different posture and on slightly different facts.

      **A.**      **The Hapag-Lloyd Test Case**

The Hapag-Lloyd test case arises out of bunker deliveries to four vessels at the Port of

Tacoma in mid- and late-October 2014.  Hapag-Lloyd instituted interpleaders in respect of three

of the vessels, the *M/V Santa Roberta*, *M/V Seaspan Hamburg*, and the *M/V Sofia Express*.  In

accordance with the Court's order, Hapag-Lloyd posted a bond "reflecting the full invoiced

amount for the applicable fuel bunkers plus interest."  *Hapag-Lloyd*, Dkt. 217 (May 6, 2016

Order) at 2.  The Hapag-Lloyd case was joined with a related arrest action that was transferred to

this Court from the Western District of Washington involving the *M/V Vienna Express*, No. 15-

CV-6718.  Hapag-Lloyd has provided a LOU to cover the cost of the bunkers provided to the

*M/V Vienna Express* and offered to post substitute security.  No. 15-CV-6718, Dkt. 23 (Hapag-

Lloyd Answer) ¶ 33; *see also Hapag-Lloyd*, Dkt 285 (Hapag-Lloyd Reply Mem.) at 10.

---

[6]      The bunker supply contracts between the Vessel Interests and the O.W. entities provide for interest on any unpaid invoices and recovery of attorneys' fees.  *See Hapag-Lloyd*, Dkt. 232 (O.W. Germany Mem.) at 23; *Clearlake*, Dkt. 173 (ING Mem.) at 20; *Nippon*, Dkt. 143 (O.W. USA Mem.) at 15.

[7]      The Vessel Interests also resist the motions for summary judgment on O.W.'s and ING's *in personam* claims to the extent they would lead to double liability for the bunkers.  That argument is moot in light of the Court's ruling in *O.W. II* that the Physical Suppliers do not have maritime liens.  (As a tactical matter, the *in personam* counterclaims against the Vessel Interests appear to have been asserted as a "Plan B" in the event the Court concluded that the Physical Suppliers, and not O.W. and ING, held maritime liens.  *See Hapag-Lloyd*, Dkt. 259 (ING Opp.) at 9-10 (arguing that the Vessel Interests are liable to O.W. for breach of contract "irrespective of who holds the maritime lien").)

O.W. Germany moved for summary judgment on its *in personam* claims and counterclaims in respect of three of the vessels. *Hapag-Lloyd*, Dkt. 232 (O.W. Germany Mem.) at 1-2, 22. O.W. Germany argues that, in addition to the principal amount due under the relevant bunker supply contracts, it is entitled to recover fees and interest at the contract-rate of 12% per annum. *See id.* at 22. Hapag-Lloyd opposes O.W. Germany's claims to the extent that it seeks fees and interest in excess of the value of the bonds and LOU. *Hapag*-Lloyd, Dkt. 249 (Hapag-Lloyd Opp.) at 6; *Hapag-Lloyd*, Dkt. 285 (Hapag-Lloyd Reply Mem.) at 8. Both O.W. Germany and ING oppose Hapag-Lloyd's motion for discharge. *Hapag-Lloyd*, Dkts. 259 (ING Opp.), 269 (O.W. Germany Opp.). ING argues that Hapag-Lloyd should not be discharged unless and until the Court rules on the *in personam* claims of the parties. *Hapag-Lloyd*, Dkt. 259 (ING Opp.) at 10-12. O.W. opposes discharge on the grounds that the bond and LOU are inadequate and that Hapag-Lloyd has not satisfied the statutory requirements to be discharged. *Hapag-Lloyd*, Dkt. 269 (O.W. Germany Opp.) at 2-6.

### B.     The Nippon Test Case

The Nippon test case arises out of a delivery of bunkers to the *M/V Riegel Leader* at the Port of Houston on October 16, 2016. *O.W. II*, 2017 WL 78514 at *3. The *Riegel Leader* was chartered by Nippon Yusen Kabushiki Kaisha ("Nippon Yusen"). The bunkers were ordered by an affiliated company, Nippon Yusen Kaisha Trading Corporation ("NYKTC"), which acted as Nippon Yusen's agent. *See id.*, 2017 WL 78514 at *11 n.16. Nippon Yusen instituted this interpleader on behalf of itself and NYKTC. *Nippon,* Dkt. 164 (Nippon Yusen Reply Mem.) at 2-3. Unlike in the Hapag-Lloyd test case, Nippon Yusen deposited into the Court's registry cash in the amount of the disputed invoice plus 6% interest. O.W. USA answered asserting an *in rem*

right to the stake and asserted an *in personam* breach-of-contract claim against both Nippon

Yusen and NYKTC.  *See Nippon*, Dkt. 98 (O.W. USA Am. Answer) at 9-13.

O.W. USA moved for summary judgment on its *in rem* and *in personam* counterclaims.

*Nippon*, Dkt. 143 (O.W. USA Mem.) at 5.  O.W. USA contends that it is entitled to recover

interest at the contract rate and fees on its *in personam* claim, in addition to the principal amount

of the invoice.  *Id.* at 15.  On the same basis, O.W. USA opposes Nippon Yusen's motion to be

discharged.  *Nippon*, Dkt. 157 (O.W. USA Opp.) at 3-4.  Nippon Yusen opposes O.W. USA's

motion to the extent O.W. USA claims an entitlement to fees and interest in excess of the

interpleader stake.  *Nippon*, Dkt. 156 (Nippon Yusen Opp.) at 4.

### C.      The Clearlake Test Case

The third test case relates to bunkers delivered on O.W.'s behalf to the *M/V Hellas Glory*

and *M/V Venus Glory* at the Port of Houston.  *O.W. II*, 2017 WL 78514 at *3.  The vessels'

charterer, plaintiff Clearlake Shipping PTE Ltd., instituted the interpleader.  *Id.*  As in the

Nippon case, Clearlake deposited into the Court's registry cash in the amount of the bunker

invoices and interest at 6% per annum.  *Id.* at *2.

ING filed an *in rem* claim to the stake and an *in personam* counterclaim against Clearlake

for breach of contract.  *Clearlake*, Dkt. 125 (ING Am. Answer) ¶¶ 10, 13, 25-26.  ING moved

for summary judgment on its entitlement to the stake without specifying whether it was moving

on both or just its *in rem* claims; its memorandum of law asserts a right to recover under both

theories.  *Compare Clearlake*, Dkt. 171 (ING Mot.) at 1 and *Clearlake*, Dkt. 173 (ING Mem.) at

19-21.  ING also opposes Clearlake's motion for discharge on the grounds that Clearlake might

be independently liable in excess of the stake on an *in personam* basis.  *Clearlake*, Dkt. 195

(ING Opp.) at 10-12.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted)). Courts "'construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant.'" *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009) (alteration omitted)).

### 1.   Discharge of the Vessel Interests

Section 2361 authorizes the Court to discharge the Vessel Interests from further liability. An interpleader plaintiff may be discharged if the Court concludes that the jurisdictional requirements of Section 1335 are satisfied and that the plaintiff is "disinterested"—meaning it has renounced any claim to the stake. *See Mendez v. Teachers Ins. & Annuity Assurance Ass'n & College Retirement Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992). Ordinarily, a disinterested plaintiff is discharged early in the litigation. *See Citigroup Glob. Mkts., Inc. v. KLCC Invs., LLC*, No. 06-CV-5466 (LBS), 2007 WL 102128, at *8 (S.D.N.Y. Jan. 11, 2007). Whether to discharge the plaintiff before resolving the competing claims to the stake is within the discretion of the Court, however. *Id.*; *see also Royal School Labs., Inc. v. Town of Watertown*, 358 F.2d 813, 817 (2d Cir. 1966). When an interpleader plaintiff disputes the extent

of its liability, the Court may determine the rights of the parties before addressing discharge.  *See*

*Bankers Trust Co. of W. N.Y. v. Crawford*, 559 F. Supp. 1359, 1364-65 (W.D.N.Y. 1983); *John*

*Hancock Mut. Life Ins. Co. v. Yarrow*, 95 F. Supp. 185, 187 (E.D. Pa. 1951); 7 Charles Alan

Wright & Arthur R. Miller, Federal Practice & Procedure § 1714 (3d ed. 2016).[8]

Here the Vessel Interests have maintained throughout the proceedings that they cannot be

held liable both to the O.W. entities (or ING as their assignee) *and* to the Physical Suppliers, and

they dispute the O.W. entities' and ING's claims that they are entitled to interest at the contract

rate and fees.[9]  The Court's opinion in *O.W. II* resolves the risk that the Vessel Interests will be

liable to both O.W. or ING and the Physical Suppliers on the same debt.  Because the Physical

Suppliers do not claim a contractual entitlement to the stake and do not have a maritime lien,

there is no potential for double-liability in these cases.

This opinion resolves the remaining points of contention between the Vessel Interests and

O.W. USA and ING in the Clearlake and Nippon test cases.  Because the Vessel Interests are

clearly no longer "interested" in those two test cases, and because the Court has already

concluded that the jurisdictional requirements of Section 1335 are met in those cases, *see O.W. I*,

2015 WL 4005527, at *9, there is no reason to delay further the discharge of Nippon Yusen and

Clearlake.  The Hapag-Lloyd test case, however, requires further proceedings in order to

determine whether the stake is adequate in that case.  Accordingly, the Court GRANTS

---

[8]        *Advantage Title Agency*, cited by the parties, is similar.  In that case, the interpleader plaintiff moved for a discharge and asserted a right to fees and expenses in connection with bringing the interpleader action.  *Advantage Title Agency, Inc. v. Rosen*, 297 F. Supp. 2d 536, 537 (E.D.N.Y. 2003).  The plaintiff conceded that the merits of its motion for fees and expenses were interrelated with the "validity and superiority of the competing claims."  *Id.* at 539.  Thus, like in this case, the court delayed consideration of the motion for discharge until after the Court had resolved the parties' competing claims to the stake.

[9]        The Physical Suppliers also objected to the Vessel Interests' discharge, arguing that the Vessel Interests are interested in the outcome of these proceedings.  The Court has resolved the Physical Suppliers' motions for summary judgment; they no longer have any claim to the stake.

Clearlake's and Nippon Yusen's motions for discharge[10] and DENIES WITHOUT PREJUDICE Hapag-Lloyd's motion for discharge.

  **A.**  *In Personam* **Counterclaims**

  ING opposes Clearlake's and Hapag-Lloyd's motions for discharge on the grounds that the Vessel Interests contractual obligations under the bunker supply contracts are "independent" bases for liability.  *Hapag-Lloyd*, Dkt. 259 (ING Opp.) at 11.[11]  An independent claim is one that is based on "wrongful conduct independent from the filing of an interpleader, or the retention of interpleaded assets pending direction from the court."  *Bank of N.Y. v. First Millennium, Inc.*, No. 06-CV-13388 (CSH), 2008 WL 953619, at *7 (S.D.N.Y. Apr. 8, 2008).  A claim that the plaintiff should have paid one of the claimants rather than instituting the interpleader is not an "independent" claim—it is a claim to the stake itself.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98-CV-1756 (LMM), 2001 WL 11070, at *6 (S.D.N.Y. Jan. 4, 2001); *see also Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264-65 (3d Cir. 2009).  For example, in *Hovis*, the Third Circuit held that tort and breach-of-contract claims asserted by one of the claimants to a disputed insurance policy were not independent of the claimant's interest in the stake.  *Hovis*, 553 F.3d at 265.  The alleged breach of contract was the insurer's refusal to pay out the policy to the claimant, and the torts arose out of the insurer's decision to institute the interpleader.  *Id.* at 261, 264-65.

  The *in personam* claims asserted by ING and the O.W. entities are not a basis to deny a discharge to the Vessel Interests.  ING's and the O.W. entities' counterclaims are based on their

---

[10]  The discharge of Nippon Yusen in Case No. 14-CV-10091 will be conditioned on it increasing slightly the amount on deposit, as discussed in note 17 *infra*.

[11]  Neither O.W. Germany nor O.W. USA joins in this argument.

contractual right to payment under the bunker supply contracts.  The essence of the counterclaims is that the Vessel Interests breached their contractual obligations by instituting the interpleaders rather than paying ING and the O.W. entities.[12]  Put differently, these counterclaims are based on "[the Vessel Interests'] retention of interpleaded assets pending direction from the court," *Union Cent. Life Ins. Co. v. Berger*, No. 10-CV-8408 (PGG), 2012 WL 4217795, at *11 (S.D.N.Y. Sept. 20, 2012) (quoting *First Millennium, Inc.*, 2008 WL 953619, at *7), and are duplicative of ING's right to recover against the stake.  *See Clearlake*, Dkt. 125 (ING Am. Answer) ¶ 26 (demanding "damages for Clearlake's breaches of contract in the full amount of the Disputed Funds").  As the Court explained in *O.W. I*, the *in personam* counterclaims "are merely alternative procedural devices to obtain the same relief as would be obtained by arresting the Vessel."  *O.W. I*, 2015 WL 4005527, at *6.  Notably, ING does not argue that it can recover twice, first on its *in rem* claims against the stake and again on its *in personam* counterclaim against Clearlake.[13]  In short, the counterclaims are not "independent" bases of liability.

---

[12]     For example, ING's counter-complaint alleges that Clearlake is liable to O.W. (and ING as its assignee) for the delivery of bunkers in accordance with the terms of the bunker supply contracts executed by the parties and that "[Clearlake's] failure to pay constitutes [a] breach[] of Clearlake's contract[] with O.W."  *See Clearlake*, Dkt. 125 (ING Am. Answer) ¶ 25.

[13]     The potential that the interpleader plaintiff might be doubly liable on a debt goes to the adequacy of the stake and the scope of the discharge—not whether the claims are independent.  Because interpleader is procedural, there is always a possibility that the interpleader case will not resolve all valid claims to the stake.  The possibility of double liability is moot in this case, however, because the Court has denied the Physical Suppliers' claims to the stake.  Accordingly, the Court need not—and does not—consider whether the stake would be adequate if the Physical Suppliers had valid maritime liens.  What counts at this stage is that ING is not in a position to recover more than the value of the stake.

B.    **Adequacy of the Stake**

i.    *Clearlake and Nippon Test Cases*

O.W. USA and O.W. Germany argue that the stakes are inadequate to account for their *in personam* claims because they are contractually entitled to prejudgment interest and fees.[14]  ING has also asserted a claim to prejudgment interest in the Clearlake test case.  *Clearlake*, Dkt. 173 (ING Mem.) at 20.  These claims relate to the adequacy of the stake, and it would have been appropriate to raise these issues at the jurisdictional stage.  *See A & E Television Networks, LLC v. Pivot Point Entm't, LLC*, 771 F. Supp. 2d 296, 301 (S.D.N.Y. 2011) (explaining that as a "general rule" statutory interpleader requires the stakeholder to deposit the highest sum demanded by the defendant-claimants).  While the Physical Suppliers argued in *O.W. I* that the Vessel Interests should be required to post double security to cover the *in personam* and *in rem* claims, neither ING nor the O.W. entities argued that additional security was necessary to account for their *in personam* rights.  Nonetheless, because the Court did not discharge the Vessel Interests at the jurisdictional stage, no party is prejudiced by the Court's consideration of this issue now.  *Cf.* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1716 (3d ed. 2016) (entitlement to interest should be determined in connection with discharge).

O.W. USA and ING are not entitled to prejudgment interest at the contract rate in either the Nippon or Clearlake test cases, respectively.  In Clearlake, the Vessel Interests deposited with the Clerk of the Court the principal amount of the invoiced bunkers and 6% interest per year.  *See Clearlake*, Dkts. 97 (restraining order), 98 (deposit order).  In the Nippon case, Nippon

---

[14]    ING appears to join in this argument in passing.  *See Clearlake*, Dkt. 195 (ING Mem.) at 11.  Additionally, ING asserted a claim to contract interest in its Amended Answer and Counterclaims.  *Clearlake*, Dkt. 125 (ING Am. Answer) ¶¶ 9, 21.  Clearlake's motion for discharge also seeks a determination that ING is not entitled to interest. *See Clearlake*, Dkt. 200 (Clearlake Reply Mem.) at 6-7.

Yusen, on behalf of NYKTC, also deposited the principal amount of the invoiced bunkers and 6% interest. *See Nippon*, Dkts. 4 (restraining order), 5 (deposit order). The deposit of the disputed funds into the Court's registry cuts off any claim to prejudgment interest by the defendant-claimants because depositing the funds is functionally the equivalent of tendering payment of the disputed amount. *See Fid. Bank v. Commonwealth Mar. & Gen. Assurance Co.*, 592 F. Supp. 513, 524 (E.D. Pa. 1984) ("For interest purposes, a federal interpleader court treats the interpleading party as having satisfied its obligation to the successful claimants as of the date that the interpleading party deposits the interpleaded fund in court."). "No interest runs against the stakeholder after he pays the disputed sum into Court." [15] *Atlin v. Sec. Conn. Life Ins. Co.*, 788 F.2d 139, 142 (3d Cir. 1986); *see also Stuyvesant Ins. Co. v. Dean Const. Co.*, 254 F. Supp. 102, 113 (S.D.N.Y. 1966). As the *Atlin* Court explained, "two considerations" motivate this approach. First, because the stake has been deposited with the Court, the interpleader plaintiff no longer has the benefit of the use of the money. Second, the funds may be invested while on deposit with the Court and the proceeds of those investments will accrue to the successful claimant. *See Atlin*, 788 F.2d at 142; *see also Fid. Bank*, 592 F. Supp. at 524 ("The usual and

---

[15] The bunker supply contracts in the Nippon and Clearlake test cases are governed by English law. Neither ING nor O.W. USA has addressed the effect of the parties' choice of law on what appears to be a federal common law or equitable rule against post-deposit interest. Because no party has raised this issue, the Court need not untangle the conflict-of-laws issue and assumes that the federal rule against post-deposit interest applies to these cases.

In any event, it is likely that the rule against post-deposit interest applies to federal interpleaders regardless of the parties' substantive choice of law. In *Atlin*, the Third Circuit applied this rule in a diversity case, even though Pennsylvania law, the governing substantive law, permits pre-judgment interest. *See Atlin*, 788 F.2d at 142. This outcome makes sense: the rule against post-deposit interest is necessary for the interpleader statute to function effectively. Thus, even if there were a conflict with English law, public policy would likely require the Court to disregard the parties' choice-of-law to the extent it directly conflicts with the effective functioning of the interpleader statute. *Cf. Organ v. Byron*, 435 F. Supp. 2d 388, 392 (D. Del. 2006) ("A choice of law clause can be held 'unreasonable' if, *inter alia,* 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision.'" (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))).

general rule [after the date the fund is paid into court] is that any interest on the interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." (quoting *Webb's Fabulous Pharm. v. Beckwith*, 449 U.S. 155, 162 (1980)). Additionally, because interpleader proceedings may delay payment while the Court resolves the defendants' competing claims, demanding that the stakeholder pay interest would effectively penalize the plaintiff for resorting to the interpleader remedy and peg the cost of doing so to the parties' litigation strategies.[16]

The Court also rejects O.W. USA's argument that Nippon Yusen is liable for interest for the relatively brief period between when its invoice came due and when the interpleader was instituted. *See Nippon*, Dkt. 166 (O.W. USA Opp.) at 6-7. Whether to order a party to deposit pre-filing interest in interpleader actions is "firmly" within the discretion of the court. *A & E Television Networks, LLC*, 771 F. Supp. 2d at 303. An award of pre-filing interest is typically appropriate when the plaintiff has unreasonably delayed instituting the proceeding. *See Avant Petroleum, Inc. v. Banque Paribas*, 652 F. Supp. 542, 544 (S.D.N.Y. 1987). In this case, Nippon Yusen "waited" approximately five weeks before instituting the interpleader. In light of the complex issues involved and the fact that there are stakeholders across the globe, that delay was not unreasonable. There is no evidence that Nippon Yusen acted to "take advantage" of the equitable remedy of interpleader, *see John Hancock Mut. Life Ins. Co. v. Doran*, 138 F. Supp. 47, 49 (S.D.N.Y. 1956), or that it failed to exercise reasonable diligence. [17]

---

[16]     In passing, O.W. USA argues that it is entitled to attorneys' fees and expenses under the bunker supply contracts. *Nippon*, Dkt. 143 (O.W. USA Mem.) at 15. ING also reserved its right to assert a claim for fees and expenses. *See Clearlake*, Dkt. 173 (ING Mem.) at 20 n.11. Neither party has adequately presented this issue to the Court at this juncture. In the Court's view, contractual fee- and expense-shifting provisions are similar to contractual provisions for pre-judgment interest. Assessing fees and costs would effectively penalize the plaintiff for instituting the interpleader action. *See Atlin*, 788 F.2d at 142.

[17]     O.W. USA has additionally objected to discharge in the Nippon case on the grounds that the stake is short of the total amount of the invoice by approximately $10,000. *Nippon*, Dkt. 157 (O.W. USA Opp.) at 3. The Court

ii.    *Hapag-Lloyd Test Case*

The Hapag-Lloyd test case is in a different posture.  Hapag-Lloyd did not deposit the

principal amount of the invoices into the Court's registry.  Hapag-Lloyd posted bonds to cover

the amount of the invoices related to the *M/V Santa Roberta*, *M/V Seaspan Hamburg*, and the

*M/V Sophia Express*.  The fourth invoice—on account of the *M/V Vienna Express*—is

represented by a LOU initially posted in the Western District of Washington.[18]  Posting a bond

or Letter of Undertaking is not the equivalent of depositing cash into the Court's registry.  A

plaintiff who posts a bond in lieu of depositing cash in the Court's registry is potentially liable

for prejudgment interest.  *See Amoco Transp. Co. v. Dietze, Inc.*, 582 F. Supp. 804, 806

(S.D.N.Y. 1984); *see also Lee Nat'l Corp. v. Kansas City S. Indus., Inc.*, 50 F.R.D. 412, 413

(S.D.N.Y. 1970) ("It is well established that a party who has had the use of disputed funds for a

period of time must pay interest on that portion of the funds finally determined to belong to his

adversary." (quoting *United States v. E. Air Lines, Inc.*, 366 F.2d 316, 321 (2d Cir. 1966))).

Such a plaintiff has had the use of the funds for the duration of the proceedings, less the premium

on the bond.  And, unlike a cash deposit, the bond may not be invested, although the Court has

required the interpleader plaintiffs to annually increase the bonded amount by 6%.  For these

reasons, Hapag-Lloyd is potentially liable for interest on the bonded amount.

Whether the interpleader stake deposited by Hapag-Lloyd is in the maximum amount of

Hapag-Lloyd's liability depends on the applicable rate of interest.  Under Hapag-Lloyd's bunker

---

will condition discharge on the deposit of the correct amount in the Court's registry.  O.W. USA further contends
that this proceeding was instituted by the wrong member of the NYK family of companies.  *Id.* at 4.  The Court has
already concluded that NYKTC acted as Nippon Yusen's agent in the bunkering transactions.  *See O.W. II*, 2017
WL 78514, at *11 n.16.  Moreover, as Nippon Yusen points out, nothing in the text of Section 1335 prohibits a
principal from instituting an interpleader proceeding on behalf of its agent.

[18]       Hapag-Lloyd is willing to substitute a bond for the LOU.  The Court will require Hapag-Lloyd to do so.
Alternatively, Hapag-Lloyd is free to deposit cash in the Court's registry in the amount of the invoice issued on
account of the *M/V Vienna Express* plus 6% interest per annum.

contracts a 12% rate of interest applies—greater than the current interest posted on the bond (6% per annum).  In the analogous context of contract claims asserted in diversity interpleaders, federal courts have applied the substantive law governing the claim to determine whether prejudgment interest should be assessed and, if so, at what rate.[19]  *See A&E Television Networks, LLC*, 771 F. Supp. 2d at 303 n.5; *see also Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 684 (2d Cir. 1989).

The terms and conditions applicable to the supply of bunkers to Hapag-Lloyd contain a German choice-of-law provision, and the parties agree that German law should apply.  *See Hapag-Lloyd*, Dkt. 232 (O.W. Germany Mem.) at 21, Dkt. 249 (Hapag-Lloyd Opp.) at 6.  While Hapag-Lloyd suggested that application of German law *might* be unreasonable if USOT held an *in rem* claim under U.S. law (now a moot point), no party has suggested that application of German law to the bilateral dispute between Hapag-Lloyd and O.W. Germany is unreasonable under the scenario now before the Court.

Because O.W. Germany is a debtor in insolvency proceedings, determining whether it is entitled to prejudgment interest requires the Court to consider the interaction of German contract law and German insolvency law.  Neither party has explicitly addressed the treatment of prejudgment interest under German contract and insolvency law.  Hapag-Lloyd has submitted an interpretation of German law that argues that it has no *in personam* liability to O.W. Germany if the Court finds that Hapag-Lloyd is also liable to the Physical Suppliers, *Hapag-Lloyd*, Dkt. 248 (Schroeder Decl.) at 9-13.  That opposition is, by its terms, limited to a situation in which the physical supplier has a lien—an outcome this Court has already rejected in *O.W. II*—and, in any

---

[19]     To the extent ING ultimately recovers on an *in rem* theory in the Hapag-Lloyd case, the same rule applies in admiralty.  *See In re Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1333 (7th Cir. 1992) (applying substantive law of claim to prejudgment interest in admiralty because "rules for prejudgment interest . . . usually come from the law defining the elements of damages").

event, does not directly address the availability of prejudgment interest.  Likewise, O.W.

Germany's submissions on German law do not address specifically whether it is entitled to

prejudgment interest.

 Under the circumstances, the Court exercises its discretion to require further briefing on

German law as it applies to the question of prejudgment interest.  "The Federal Rules of Civil

Procedure provide that '[i]n determining foreign law, the court may consider any relevant

material or source, including testimony, whether or not submitted by a party or admissible under

the Federal Rules of Evidence.'"  *In re Tyson*, 433 B.R. 68, 78 (S.D.N.Y. 2010) (Cote, J.)

(quoting Fed. R. Civ. P. 44.1).  Because the parties have not adequately addressed a controlling

point of foreign law, it is appropriate for the Court to require additional briefing from the parties.

*See Mackley v Sullivan & Liapakis, P.C.*, No. 98-CV-840 (SWK), 2001 WL 1658188, at *4

(S.D.N.Y. Dec. 27, 2001); Fed. R. Civ. P. 44.1, advisory committee note ("the court is free to

insist on a more complete presentation by counsel").

### C. The Vessel Interests' Claims to Fees and Expenses

 Each of the Vessel Interests requests an award of fees and expenses from the interpleader

stake.  "To assess fees and costs in favor of the stakeholder, a court of equity must find that (1) a

disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds

into court, and (4) has sought a discharge from liability."  *Septembertide Publ'g, B.V.*, 884 F.2d

at 683.  An interpleader plaintiff's involvement in the case after depositing the stake does not

necessarily rule out recovery of fees.  Where a plaintiff's involvement is required on account of

resistance to the interpleader or a dispute over whether the jurisdictional requirements of

interpleader are satisfied, an award of fees is potentially still appropriate.  *See A/S Krediit Pank

v. Chase Manhattan Bank*, 303 F.2d 648, 649 (2d Cir. 1962) (per curiam) (fees appropriate in

litigation related to defendant-claimant's resistance to interpleader); *Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 367 (S.D.N.Y. 1995) (fees related to litigating interpleader are recoverable).

The Court will not determine the exact quantum of recoverable fees at this juncture. The parties have not submitted necessary documentation that would be required for the Court to determine a "reasonable" award, and it is possible that there will be substantial further litigation in these cases. *See Penn. Fire Ins. Co. v. Am. Airlines, Inc.*, 180 F. Supp. 239, 243 (E.D.N.Y. 1960) (delaying determination of fees until completion of cases). Nonetheless, it is appropriate at this stage for the Court to conclude that the Vessel Interests that are currently entitled to be discharged—Clearlake and Nippon Yusen—are also entitled to recover some measure of fees, subject to a proper motion under Rule 54 to fix the amount of the award.

The fact that Clearlake and Nippon Yusen continued to participate in the litigation after the jurisdictional stage does not undercut their claim to fees as ING urges in the Clearlake case. *See Clearlake,* Dkt. 195 (ING Opp.) at 13-14. Rather, Clearlake (and Nippon Yusen) may still recover fees accrued in instituting these proceedings and defending the interpleader procedure from jurisdictional challenges before this Court and in the Second Circuit. *See Chem. Bank v. Richmul Assocs.,* 666 F. Supp. 616, 620 (S.D.N.Y. 1987) (pro-rating fees); *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194-95 (9th Cir. 1962); *see also* 7. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1719 (3d ed. 2016) ("A better approach might be to award costs and fees to the stakeholder only for the effort undertaken to secure the interpleader but to deny an allowance for costs and fees incurred in pursuit of the stakeholder's own interests."). The Vessel Interests may also recover for reasonable expenses associated with their participation in discovery in a disinterested capacity. *See Estate of*

*Ellington v. EMI Music Publ.*, 282 F. Supp. 2d 192, 194-95 (S.D.N.Y. 2003) (considering costs of discovery as relevant to award of attorneys' fees); *cf. Fid. Brokerage Servs. LLC v. Caro*, No. 10-CV-5893 (BSJ), 2011 WL 4801523, at *2 (S.D.N.Y. Oct. 11, 2011) (denying costs of discovery because discovery was related to separate suit and was an ordinary cost of doing business).  On the other hand, the Court will not permit the Vessel Interests to recover for fees expended disputing the relative merits of the parties' claims to the stake.  *See Pressman*, 886 F. Supp. at 367; *Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F. Supp. 177, 184 (S.D.N.Y. 1990).[20]

In short, the Vessel Interests are entitled to recover reasonable fees in connection with the institution of the interpleaders, litigation over jurisdiction and the closely related question of discharge, and their participation, on a disinterested basis, in the discovery process.  The Vessel Interests may not recover attorneys' fees associated with disputing the various claims to the stake.[21]  Moreover, it bears emphasizing that the Court will award only *reasonable* fees.  The parties will be directed by separate order to address the process by which the Court should award fees.

---

[20]    The Court has already rejected O.W. USA's arguments based on the small discrepancy in the value of the stake and the identity of the proper plaintiff in the Nippon Yusen case.  *See supra* n.17.  The Court also rejects these arguments to the extent O.W. USA raises them as grounds to deny an award of fees.  *See Nippon Yusen*, Dkt. 157 (O.W. USA Opp.) at 5.

         The Court is similarly unpersuaded by O.W. Germany's argument in the Hapag-Lloyd test case that these interpleaders are an "ordinary cost of doing business" for the Vessel Interests.  *See Hapag*-Lloyd, Dkt. 269 (O.W. Germany Opp.) at 8-9, Dkt. 272 (USOT Opp.) at 20.  The cases relied on for this proposition deal primarily with insurance companies, which often face competing claims to a policy.  *See e.g.*, *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 320-21 (S.D.N.Y. 2014), *but see Sparta Fla. Music Grp., Ltd. v. Chrysalis Records, Inc.*, 552 F. Supp. 44, 47 (S.D.N.Y. 1982) (declining to award fees where there was testimony that similar disputes were common occurrences in the industry).  Fortunately, major maritime fuel suppliers do not collapse in worldwide bankruptcies regularly, and no party has suggested that vessel owners and charterers frequently face competing demands from their traders and physical suppliers that put their vessels at risk of transnational arrests.

[21]    The Court recognizes that, as a business matter the Vessel Interests had an interest in advocating the position that the Physical Suppliers did not have a maritime lien.  That business interest, however, militates against them being entitled to recover their attorneys' fees for that work.

2.    **In Personam Claims to the Stake**

ING, O.W. Germany, and O.W. USA have also moved for summary judgment on their *in personam* claims to the stake and *in personam* counterclaims in each of the three test cases.  The parties' *in personam* rights are more straightforward than their *in rem* claims that are the subject of the Court's decision in *O.W. II.*  For the reasons that follow, the Court GRANTS ING's and the O.W. entities' motions for summary judgment on their *in personam* claims to the stake in each of the three test cases, as applicable.

A.    **The Clearlake Test Case**

ING has moved for summary judgment in the Clearlake test case on its *in personam* right to the stake.  *See Clearlake*, Dkt. 173 (ING Mem.) at 19-20.  The parties do not dispute that Clearlake contracted with O.W. Switzerland for delivery of bunkers, that those contracts are valid, and that O.W. caused NuStar to deliver bunkers in respect of this obligation to the *M/V Venus Glory* and the *M/V Hellas Glory* at the Port of Houston.  *See O.W. II*, 2017 WL 78514, at *3.  Clearlake took no position on ING's *in personam* claim to the principal amount of the invoices in response to its motion for summary judgment.  *Clearlake*, Dkt. 197 (Clearlake Opp.) at 1.  NuStar, the physical supplier for the Clearlake transactions, challenges O.W. Switzerland's assignment of its *in rem* rights to ING, but it is otherwise entirely silent as to the validity of ING's *in personam* claim.  *Clearlake*, Dkt. 188 (NuStar Opp.) at 16-19.  Indeed, the crux of NuStar's argument is that the assignment is limited to O.W. Switzerland's *in personam* rights— amounts "owed and to be owed under [the bunker] [s]upply [c]ontract"—and not *in rem* rights that might be related to bunker supply contracts but do not, strictly speaking, arise out of the contracts themselves.  *Id.* at 19.  The declaration from an English barrister submitted by NuStar concedes that the assignment to ING is valid as to contract rights.  *See Clearlake*, Dkt. 190

(Eggers Declr.) ¶ 29 ("The intention of this provision is to assign all of the contractual rights (and the accompanying title to sue) arising under the Supply Contract to ING Bank."), ¶ 30 ("In other words, the intention behind [the ING security agreement] was to assign only the contractual cause of action against the contractual counterpart (in this case, Clearlake).").

The Court finds that ING has a valid *in personam* claim to the stake in the Clearlake test case.[22]  For the reasons discussed *supra* in Part 1.B, ING may not, however, recover prejudgment interest at the contract rate.  The parties have not addressed whether ING is entitled to the 6% interest deposited in the fund by Clearlake or any interest that may have accrued on the funds on deposit during the pendency of these proceedings.[23]  The parties will be directed to address this issue at the same time as any litigation related to Clearlake's award of fees and expenses.

### B.       The Nippon Test Case

O.W. USA has moved for summary judgment on its *in personam* counterclaim in the Nippon test case.  Like in the Clearlake test case, the parties do not dispute that O.W. USA entered into a valid contractual arrangement to supply bunkers, that the bunkers were supplied, and that the invoices were not paid.  *See O.W. II.*, 2017 WL 78514, at *3.  Nippon Yusen does not contest O.W. USA's *in personam* claim for the principal amount of the invoices.  *Nippon*, Dkt. 155 (Nippon Yusen Opp.) at 1.  NuStar, O.W. USA's physical supplier, challenges O.W.

---

[22]       In *O.W. II*, the Court concluded that O.W. Switzerland held an *in rem* claim against Clearlake.  The Court did not address whether that right was properly assigned to ING.  *See O.W. II*, 2017 WL 78514, at *11 n.15.  Because the Court finds that ING has an *in personam* claim to the stake and O.W. Switzerland is not claiming an *in rem* interest in the stake, it is unnecessary for the Court to reach the question of whether O.W. Switzerland's *in rem* rights were properly assigned.

[23]       The resolution of this issue may depend in part on ING's theory of recovery.  Were ING to have an *in rem* claim, the Court ordinarily would have discretion to award ING interest on that claim.  *See Triton Mar. Fuels, Ltd. v. M/V Pacific Chukotka*, 671 F. Supp. 2d 753, 764-65 (D. Md. 2009).  The parties have not addressed whether the rule against post-deposit interest in interpleader would apply under those circumstances.  Even assuming that ING is entitled to some interest—other than whatever amounts have accrued on the principal during the pendency of these proceedings—the Court is highly skeptical that the 6% per annum currently on deposit is a reasonable reflection of the prevailing cost of funds.  The rate necessary to "fully compensate" ING is likely to be substantially lower.  *See Triton Mar. Fuels, Ltd.*, 671 F. Supp. 2d at 764.

USA's right to recover on an *in personam* claim because the funds were deposited by Nippon

Yusen, rather than O.W. USA's counterparty, NYKTC.  *Nippon*, Dkt. 150 (NuStar Opp.) at 14.

NuStar's argument is untenable in light of the concessions made in this case and the text

of the Court's restraining order.  The Court has already concluded that the parties are bound by

their express and tacit concessions that NYKTC acted as an agent of NYK.  *See O.W. II*, 2017

WL 78514, at *11 n.16.  "An agent's actions within its prescribed authority bind an undisclosed

principal . . . ."  *AdiPar Ltd. v. PLD Int'l Corp.*, No. 01-CV-0765 (MBM), 2002 WL 31740622,

at *9 (S.D.N.Y. Dec. 6, 2002).[24]  Moreover, the restraining order was in part predicated on a

need to protect "related party [NYKTC] from multiple litigation against it for the same claim,"

and deemed the deposited *res* to be a "substitute res for the claims arising for payment of the

[bunker supply contracts]."  *Nippon*, Dkt. 4 (Restraining Order) at 2.  According to Nippon

Yusen, its deposit of the *res* "constituted payment of NYKTC's obligations under the [bunker

supply contract]."  *Nippon*, Dkt. 156 (Nippon Yusen Opp.) at 1.

The Court finds that O.W. USA has a valid *in personam* claim to the stake in the Nippon

test case.  For the reasons discussed *supra* in Part 1.B, O.W. USA may not, however, recover

prejudgment interest in this interpleader at the contract rate.  As in the Clearlake case, the parties

have not addressed whether O.W. USA is entitled to the interest deposited in the fund by Nippon

Yusen or any interest that may have accrued on the funds on deposit during the pendency of

these proceedings.  For the reasons stated *supra* note 23, although the Court doubts that interest

of 6% per annum is necessary to fully compensate O.W. USA, the parties will have the

---

[24]     Because the bunker supply contract between O.W. USA and NYKTC is governed by English law, the
question of whether O.W. USA can recover from Nippon Yusen would arguably be a question of English law.  The
parties have not raised this issue.  Accordingly, the Court assumes that English law does not differ from U.S. law on
this point.

opportunity to address this issue at the same time as any litigation regarding Nippon Yusen's award of fees and expenses.

## C.      The Hapag-Lloyd Test Case

O.W. Germany moved for summary judgment in the Hapag-Lloyd test case on its *in personam* claims to the stake in respect of the *M/V Seaspan Hamburg* and *M/V Sophia Express* and its *in personam* counterclaim to the LOU in respect of the *M/V Vienna Express*.  Hapag-Lloyd opposed O.W. Germany's motion for summary judgment, but only to the extent Hapag-Lloyd would be exposed to double liability.  *See Hapag-Lloyd*, Dkt. 249 (Hapag-Lloyd Opp.) at 1-2 ("if it is determined that [USOT] has a lien . . . then under German law Hapag's liability to OW Germany is reduced or eliminated").  USOT joined in Hapag-Lloyd's conditional opposition but did not raise any independent objections to O.W. Germany's *in personam* claims.  *Hapag-Lloyd*, Dkt. 264 (USOT Opp.) at 13.  Because the Court has previously held that USOT does not possess a lien, Hapag-Lloyd's opposition to O.W. Germany's motion is moot.

As such, O.W. Germany's motion for summary judgment on its *in personam* claim is effectively unopposed.[25]  Accordingly, the Court GRANTS O.W. Germany's motion for summary judgment on its *in personam* claim to the stake.  For the reasons discussed *supra* in Part 1.B, the parties will be required to brief whether O.W. Germany is entitled to prejudgment interest on its *in personam* claim as a matter of German law.

---

[25]      The Court is contemporaneously issuing a corrected version of the *O.W. II* opinion.  The original version of the *O.W. II* opinion mistakenly granted summary judgment to ING on its *in rem* claim against the stake in the Hapag-Lloyd test case.  ING has not moved for summary judgment on its entitlement to an *in rem* claim in the Hapag-Lloyd test case, and the Court expresses no opinion as to the merits of that claim.

## CONCLUSION

The Court GRANTS the Vessel Interests' motions for discharge in Case No. 14-CV-9287 and Case No. 14-CV-10091, subject to the conditions to be set forth by separate order.

The Court DENIES WITHOUT PREJUDICE Hapag-Lloyd's motion for discharge in Case No. 14-CV-9949.  The Court will issue a separate order directing the parties to provide further briefing on the question of prejudgment interest under German law.

Upon the final resolution of these actions, the Court will issue a separate order relative to the Vessel Interests' claims to attorneys' fees and O.W. USA's and ING's claims to the interest on deposit in the Clearlake and Nippon test cases.

The Court also GRANTS ING's motion for summary judgment on its *in personam* claim to the stake in Case No. 14-CV-9287, GRANTS O.W. USA's motion for summary judgment on its *in personam* claim to the stake in Case No. 14-CV-10091, and GRANTS O.W. Germany's motion for summary judgment on its *in personam* claim to the stake in Case No. 14-CV-9949.

The Clerk of Court is respectfully directed to close the following open motions:  In Case No. 14-CV-9287, Dkts. 171 and 176; in Case No. 14-CV-9949, Dkts. 220, 229, and 230; and in Case No. 14-CV-10091, Dkts. 138 and 140.

The Court will hold an omnibus status conference in the test cases to address the Vessel Interests' motion for fees, the conditions of their discharge, and the Physical Suppliers' pending cross-claims for unjust enrichment against ING at **3:00 pm. on March 15, 2017**.  In advance of the conference, by **March 10, 2017**, each party may submit a brief proposal of no more than two pages describing their views as to appropriate next steps in these cases.

All further proceedings in the test cases and related actions shall be stayed until the status conference.

**SO ORDERED.**

**Date:  March 3, 2017**
      **New York, New York**                                 **VALERIE CAPRONI**
                                                       **United States District Judge**